1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTY MILES,

Plaintiff,

v.

COUNTY OF ALAMEDA, et al.,

Defendants.

Case No.  22-cv-06707-WHO

**ORDER GRANTING IN PART AND DENYING IN PART THE COUNTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Re: Dkt. No. 28

**INTRODUCTION**

On November 15, 2021, Devin West was beaten and strangled to death by his cellmate, Emil Cochran, while he was incarcerated at Santa Rita Jail in Alameda County.  West's mother, Christy Miles, brought ten constitutional and state law claims individually and as West's successor-in-interest against the County of Alameda ("County"), California Forensic Medical Group, Inc. ("CFMG"), and ten County and CFMG employees based on their failure to protect West and the allegedly inadequate medical care that West received prior to his death.  The County-related defendants moved to dismiss, alleging that, among other issues, Miles lacks standing, the claims are legally and factually deficient, and defendants are protected by immunity.

Miles has shown that she has standing to serve as West's successor-in-interest.  Although at least some of the claims against at least some of the County defendants survive, it is too soon to tell whether Miles has stated a claim against all of the County defendants: Miles's claims and the County defendants' arguments for dismissal require a more developed factual record.  West is dead, Miles was not in custody with him, and she has not had an opportunity to do any discovery, including finding out the names of any of the Does.  Some of the claims, especially with respect to the Classification Does, appear plausible.  I will allow a period of discovery so that Miles may

1  identify the Doe defendants and other key facts in an amended complaint by July 25, 2023.  At

2  that point, the defendants may renew their motion to dismiss.

3  <div align="center">**BACKGROUND**</div>

4          The First Amended Complaint ("FAC") makes the following allegations, largely on

5  information and belief.  I accept all well-pleaded allegations as true for purposes of the motion to

6  dismiss.  Devin West, who was African-American and 27 years old at the time of his death,

7  suffered from several mental illnesses, including bipolar disorder, schizophrenia, and depression.

8  FAC [Dkt. No. 24] ¶ 16.  On September 20, 2021, West was arrested for burglary and battery.  *Id.*

9  ¶ 17.  At the time of his arrest, West was on probation for robbery.  *Id.*

10          During the intake and classification process at Santa Rita Jail, members of the Alameda

11  County Sheriff's Office and the California Forensic Medical Group reviewed West's file to assess

12  his classification criteria.  *Id.* ¶¶ 18, 37.  West was medically evaluated; his inmate file indicated

13  that he had "behavior disturbance, illness, and suicidal ideations."  *Id.* ¶ 18.[1]  County employees

14  responsible for classifying inmates (the "classification Does") determined that West should be

15  housed in an area designated for close observation for the severely mentally ill—Housing Unit 9.

16  *Id.* ¶¶ 22, 38.

17          While in custody at Santa Rita Jail, West displayed obvious signs and symptoms of

18  unstable behavior and mental illness.  *Id.* ¶ 23.  Such behavior included: speaking incoherently or

19  illogically, using vulgar and offensive words with both inmates and custodial staff, unprovoked

20  threatening of inmates and custodial staff, and proclivity to get into fights with cellmates, followed

21  by begging for someone to call home for him.  *Id.*  At some point, West was placed on the Inmate

22  Observation Log, which is a form of suicide watch.  *Id.*

23          West was involved in at least three separate fights with cellmates while at Santa Rita Jail.

24  *Id.* ¶ 28.  Each fight was either provoked by the cellmate or by West because of his mental illness.

25  *Id.*  Although West's ongoing mental illnesses made him incapable of requesting assistance and

26

27  ───────────────

28  [1] It is not clear from the FAC whether the behavioral disturbances and suicidal ideations were already documented in West's inmate file or whether these conditions were logged for the first time during intake. *See* FAC ¶ 18.

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

1    care as he would if he were not suffering from a mental health crisis, West communicated to

2    deputies that he did not want to be double-celled with another inmate.  *Id.* ¶ 34.  At some point,

3    based on West's criminal history, mental health issues, and recent fights with cellmates, custodial

4    staff recommended that West be housed by himself in a single cell.  *Id.*  Even though the

5    classification defendants knew that there was space for West to be housed in a single cell, *id.* ¶ 32,

6    the classification defendants overruled the recommendation and continued to house West in a

7    double-cell with another inmate.  *Id.* ¶ 36.

8            On November 14, 2021, although West had not requested to be housed with Cochran, the

9    two of them were placed in the same cell in Housing Unit 9.  *Id.* ¶ 38.  Cochran also suffered from

10   serious mental illness and had "a violent criminal history stemming back at least ten years."  *Id.*

11   ¶ 37.  Cochran had previously been arrested and/or convicted of battery, possession of a firearm

12   and ammunition, and vandalism, and in April of 2022, a judge ruled that Cochran was mentally

13   incompetent to stand trial for murder.  *Id.*  Within hours of being housed together, Cochran and

14   West had a disagreement which escalated into a physical altercation.  *Id.* ¶ 39.  Cochran, who was

15   more muscular than West, beat and strangled West while West screamed for help.  *Id.*  West died

16   at approximately 1am on the morning on November 15, 2021, approximately three days before he

17   was set to be released.  *Id.* ¶¶ 39–40.

18           During the evening of November 14 and early morning hours of November 15, Santa Rita

19   Jail staff failed to conduct timely protective cell checks and thus failed to discover and prevent the

20   altercation between West and Cochran.  *Id.* ¶¶ 44, 45.  Correctional staff must conduct more

21   frequent health and protection cell checks for inmates housed in the mental health housing unit,

22   which includes Housing Unit 9.  *Id.* ¶ 26.  For inmates who have been placed on the Inmate

23   Observation Log, correctional staff are required to conduct health and safety cell checks at least

24   every fifteen minutes.  *Id.* ¶ 26.[2]  The deputy Does failed to timely summon medical assistance for

25   West after finding him beaten in his cell.  *Id.* ¶ 47.

26           When Miles called the Santa Rita Jail to check on her son after he was supposed to be

27

28   ───────────────
     [2] It is not clear from the FAC whether West was on the Inmate Observation Log as of November 14, 2021.

3

United States District Court
Northern District of California

1  released, jail officials told her that West had already been released.  *Id.* ¶ 41.

2      The Santa Rita Jail, which is considered a "mega jail," can hold up to approximately 4,000

3  inmates and is one of the largest correctional facilities in California.  *Id.* ¶ 32.  Between 2017 and

4  2021, approximately 2,400 inmates on average were housed at the jail.  *Id.*  Approximately 40% of

5  the inmates housed at Santa Rita Jail have "mental health concerns" and approximately 20–25%

6  have "serious mental illness."  *Id.*

7      In 2017, the United States Department of Justice ("DOJ") launched an investigation into

8  Alameda County and Santa Rita Jail based on a "pattern and practice of constitutional violations in

9  the conditions at the Santa Rita Jail . . . in its provision of public mental health services."  *Id.* ¶

10  156(a).  In April of 2021, approximately seven months before West's death, the DOJ concluded

11  that there was reasonable cause to believe that the County provided constitutionally inadequate

12  housing and care for its inmates with mental health needs, in violation of the Eighth Amendment.

13  *Id.*  The DOJ also found that there was reasonable cause to believe that Santa Rita Jail violates the

14  Americans with Disabilities Act ("ADA") by denying prisoners with mental health disabilities

15  access to services, programs, and activities because of their disabilities.  *Id.*  From 2015 to 2019, at

16  least 14 prisoners died by suicide at Santa Rita Jail.  *Id.*  In total, since 2014, fifty-eight people

17  have died at Santa Rita Jail.  *Id.* ¶ 156(d).

18      On or around May 10, 2022, West's mother, Christy Miles, served her "comprehensive

19  claim against the County of Alameda pursuant to the applicable Government Code."  *Id.* ¶ 50.

20  The County never responded to the claim.  *Id.* ¶ 51.

21      On October 31, 2022, Miles filed suit against the County of Alameda, Wellpath

22  Management, Inc., and Does 1 through 10, bringing ten claims under federal and state law arising

23  from her son's death.  *See generally* Complaint [Dkt. 1].  After learning that CFMG was the

24  proper employer of the individual medical personnel at Santa Rita Jail, Miles amended her

25  complaint to name CFMG instead of Wellpath.  *See* FAC.  The FAC, which is the operative

26  pleading, includes the same ten claims: (1) "interference with familial relationship, due process –

27  violation of the Fourteenth Amendment," *see id.* ¶¶ 55–65; (2) "failure to protect – violation of the

28  Eighth Amendment," *see id.* ¶¶ 66–79; (3) denial of medical care under 43 [*sic*] U.S.C. § 1983, *see*

4

*id.* ¶¶ 80–111; (4) supervisor liability under 42 U.S.C. § 1983, *see id.* ¶¶ 112–25; (5) municipal liability – failure to train under 42 U.S.C. § 1983, *see id.* ¶¶ 126–37; (6) municipal liability – ratification under 42 U.S.C. § 1983, *see id.* ¶¶ 138–46; (7) municipal liability – unconstitutional custom, practice, policy under 42 U.S.C. § 1983, *see id.* ¶¶ 147–61; (8) Americans with Disabilities Act – reasonable accommodation, *see id.* ¶¶ 162–85; (9) negligence, *see id.* ¶¶ 186–94; and (10) violation of the Bane Act, *see id.* ¶¶ 195–203.

The FAC names four categories of County and CFMG employees as Doe defendants based on their roles at Santa Rita Jail.  Does 1–2 are the "Classification Does," who were responsible for "reviewing and obtaining all pertinent information for the proper classification of inmates, including where an inmate will be housed, under what security level the inmate will be designated, and with whom an inmate will be housed with if any," among other duties.  *Id.* ¶ 8.  Miles alleges that the Classification Does "made the intentional decision regarding the conditions of confinement including the access to adequate medical care to Decedent by their classification of Decedent in this action, which caused Decedent's and Plaintiff's harm."  *Id.*  Does 3–5 are the "Deputy Does," who were responsible for monitoring inmates, performing cell checks, and "supervising and surveilling inmates, including for preventing and intervening to ensure that inmates are not subject to harm by the hands of other inmates," among other duties.  *Id.* ¶ 9.  Miles alleges that the Deputy Does failed to conduct timely cell checks in accordance with County policy and failed to timely summon medical assistance for West after finding West beaten in his cell.  *Id.* ¶¶ 26, 44–45, 47.  Does 6–8 are the "Medical Does," who were responsible for "the intake, classification, and criteria for placing inmates in single- and/or double-cell rooms," "the safeguards in place to prevent inmates who posed a threat to others in the facility from being permitted physical access to others," "the actions taken when an inmate is attacked or injured while in custody," and "the methods of medical and mental health care and treatment to be used within SRJ to ensure the care and protection of inmates," among other responsibilities.  *Id.* ¶ 11.  Miles alleges that the Medical Does evaluated West at intake and evaluated and documented West's mental illness while at Santa Rita Jail.  *Id.*  Lastly, Does 9–10 are the "Supervisor Does," who are "managerial, supervisorial, and/or policymaking employees" of CFMG and the County.

*Id.* ¶ 12.  Miles alleges that the Supervisor Does "oversaw and were present for the evaluations and classification decisions of Decedent, yet allowed them to proceed and overrode recommendations to place Decedent in a single-cell" and "oversaw and were present for the security, surveillance, and cell checks of Decedent." *Id.* ¶ 119.

In late January, the County moved to dismiss all of Miles' claims against it and its employees (collectively, the "County defendants" or "defendants").  *See* Motion to Dismiss ("Mot.") [Dkt. 28].[3]  The County defendants assert that Miles fails to comply with the statutory prerequisites for survival claims; lacks standing to pursue a wrongful death claim; all of the claims are factually deficient; and that the County defendants are immune to the state law claims.  *Id.* at 3–25.  After full briefing and argument, my ruling follows.

<div align="center">

**LEGAL STANDARD**

</div>

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  "[A]llegations that are

---

[3] Although the motion's caption suggests that the County alone moved to dismiss, the motion makes clear that the County seeks dismissal with prejudice of "all of Plaintiff's claims as against the County and any of its employees, including the fictitious DOES 1-5 and 9-10 as such claims are inappropriate, factually unsupported, and legally precluded." Mot. at 2.  Thus, even though the individual Doe defendants have not yet been served, I have referred to the County defendants collectively where appropriate for sake of convenience.

United States District Court
Northern District of California

1    merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need

2    not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

3    (internal quotation omitted).

4        If the court dismisses a complaint, it "should grant leave to amend even if no request to

5    amend the pleading was made, unless it determines that the pleading could not possibly be cured

6    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

7    (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In making this determination,

8    the court should consider factors such as "the presence or absence of undue delay, bad faith,

9    dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to

10   the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*,

11   885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

13       The County defendants argue that all of Miles' claims must be dismissed for lack of

14   standing, purported factual and legal deficiencies, and various immunities, including qualified

15   immunity.  But because of Miles's understandable lack of knowledge, given her son's death,

16   many of these arguments are premature.  Below I address the merits of each of Miles' claims and

17   the County defendants' arguments for dismissal, with the understanding that these claims and

18   arguments may present differently on a fuller factual record.

19   **I.    STATUTORY PREREQUISITES FOR SURVIVAL CLAIMS**

20       Miles asserts one individual claim for injuries she herself suffered as a result of her son's

21   death, and nine survival claims for injuries that her son suffered as a result of his death.  The

22   County defendants assert that the latter set of claims (Claims 2–10, to be precise) must be

23   dismissed for failure to comply with state law requirements for bringing survival actions.  Mot. at

24   3–4.  While Miles' initial affidavit was inadequate, following the hearing, Miles submitted a

25   supplemental affidavit that addressed my concerns.  *See* Supplemental Affidavit of Christy Miles

26   ("Supp. Miles Aff.") [Dkt. 35].  As a result, Miles has established that she may bring the survival

27   claims.

28       "A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the

United States District Court
Northern District of California

decedent's death, and if state law authorizes a survival action." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (citation omitted). California law sets forth various requirements that must be satisfied in order for a person to initiate or continue legal claims as a decedent's successor in interest. *See generally* Cal. Code Civ. Proc. §§ 377.10, *et seq*. Among other requirements, a person seeking "to commence an action . . . as the decedent's successor in interest" must file an affidavit establishing their eligibility to pursue such an action. *See* Cal. Civ. Code Proc. § 377.32. The affidavit must include certain averments, including that the affiant is the "decedent's successor in interest," and "no other person has a superior right to commence the action," as well as "facts in support thereof." Cal. Civ. Code Proc. § 377.32(a)(5).

Miles' initial affidavit was inadequate because she did not allege any facts in support of certain key averments. Specifically, while Miles alleged that she was the decedent's "successor in interest" and that "[n]o other person has a superior right to commence the action or proceeding," *see* Affidavit of Christy Miles [Dkt. 19] ¶¶ 4–5, Miles did not allege any facts with respect to any potential children, spouse, or father. This omission was problematic because—pursuant to California Probate Code section 6402—West's claims would have passed to any spouse or children before his mother. Cal. Prob. Code ¶ 6402(a). And in the event that West had no children or spouse, the right to commence this action would have passed to his "parents equally." Cal. Prob. Code ¶ 6402(b). After the hearing, however, Miles submitted a supplemental affidavit declaring that West was not married at the time of his death, had no children, and West's father predeceased him. *See* Supp. Miles Aff. ¶ 4. As a result, Miles has complied with the statutory requirements under California law for bringing a survivor claim and may serve as West's successor-in-interest.

## II.   STANDING TO PURSUE A WRONGFUL DEATH CLAIM

The next question is whether Miles has standing to pursue the wrongful death claims. The FAC does not clearly distinguish between West's claims that survive his death, commonly

referred to as "survival claims," and Miles' claims for her injuries resulting from West's death, commonly referred to as "wrongful death" claims.  In the briefing, however, Miles clarified that she is not asserting a wrongful death claim for Claims 2–4 but that she asserts both survival and wrongful death actions in Claims 5–7, which are the *Monell* claims.  *See* Opposition to Motion to Dismiss ("Opp.") [Dkt. 29] at 7.  As explained below, because section 1983 cannot be used to assert a wrongful death claim, the wrongful death claims in Claims 5–7 must be dismissed.

"A wrongful death action is a separate claim brought by a decedent's heirs for damages they personally suffered as a result of the decedent's death." *Est. of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 587146, at *3 n.2 (N.D. Cal. Jan. 29, 2018) (citing *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013)).  "Survivor actions are based upon the decedent's own individual claims that he would have been entitled to file for his own injuries." *Est. of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 n.4 (S.D. Cal. 2015).

Section 1983 actions may only be survival actions.  *See id.* ("[O]nly a survivor action may be brought in a 42 U.S.C. § 1983 action."); *Murphy v. Cty. of Mendocino*, No. 15-cv-04624-NJV, 2016 WL 794458, at *2 (N.D. Cal. Mar. 1, 2016) ("To be clear, there is no 'wrongful death' claim under § 1983."); *see also Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157, 1163–64 (C.D. Cal. 2018) (dismissing a child's individual section 1983 claim for excessive force and denial of medical treatment arising out of the shooting of her father by police and stating that the child "may not bring these claims personally because she was not directly subjected to excessive force or denied medical treatment"); *J.K.J. v. City of San Diego*, No. 19-cv-2123, 2020 WL 738178, at *4 (S.D. Cal. Feb. 13, 2020) ("[T]o the extent the four federal claims, each brought under 42 U.S.C. § 1983, are intended to be wrongful death claims seeking damages for J.K.J.'s injuries, they are dismissed with prejudice.").  In general, wrongful death actions by a surviving relative "cannot be brought under Section 1983, as constitutional rights cannot be vicariously asserted."  *Hernandez-Cortina v. Cty. of Riverside*, No. 18-cv-01579, 2019 WL 403957, at *3 (C.D. Cal. Jan. 30, 2019); *see also Herd*, 311 F. Supp. 3d at 1165 ("Fourth Amendment rights are personal 'and may not be vicariously asserted.'") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

Miles does not address defendants' authority showing that section 1983 does not support

9

1    wrongful death claims.  Opp. at 7.  Nor does Miles provide any authority demonstrating that she

2    may pursue wrongful death claims through her *Monell* theories of liability, which are indisputably

3    brought under section 1983.  *Id.*  Accordingly, to the extent that Claims 5–7 are intended to be

4    wrongful death claims seeking damages for Miles's own injuries, they are **DISMISSED**.

5    **III.    DOE DEFENDANTS**

6            Next, the County defendants argue that all of the claims against the Doe defendants must

7    be dismissed because "[g]enerally, Doe pleading is improper in federal court" and Miles does not

8    include alleged facts specific to each Doe employee.  Mot. at 16–17 (citing *McMillan v. DOI*, 907

9    F. Supp. 322, 328 (D. Nev. 1995)).  I agree that Miles should name the particular individual

10   defendants involved in her claims and—as I explained during the hearing—I will give Miles leave

11   to conduct expedited discovery so that she has an opportunity to do so.

12           "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Garcia v.*

13   *City of King*, No. 16-cv-06712-EJD, 2017 WL 5194519, at *9 (N.D. Cal. Nov. 9, 2017) (quoting

14   *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (dismissing claims against Doe

15   defendants with leave to amend because pleading fictitious Doe defendants is disfavored); *see also*

16   *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 918 n.4 (N.D. Cal. 2010) (same).  With that being said,

17   though, "[t]he use of 'Doe' defendants where a defendant's true identity is unknown is common,"

18   *Sullivan v. Storer Transit Sys.*, No. 20-cv-00143-JCS, 2020 WL 1531366, at *5 (N.D. Cal. Mar.

19   31, 2020), and "[i]n such circumstances, the plaintiff should be given an opportunity through

20   discovery to identify the unknown defendants, unless it is clear that discovery would not uncover

21   the identities, or that the complaint would be dismissed on other grounds."  *Gillespie*, 629 F.2d at

22   642.

23           The parties shall conduct an initial phase of discovery narrowly aimed at determining the

24   identities of the individual Doe defendants and other key facts relevant to Miles' claims against

25   the individual Doe defendants.  This may include, as the County defendants request, discovery

26   regarding whether Plaintiff exhausted her administrative remedies.    As I explain elsewhere in the

27   Order, Miles has pleaded sufficient facts to state Eighth Amendment and ADA claims against at

28   least the Classification Does based on the allegations that, among other things, the Classification

United States District Court
Northern District of California

10

defendants knew of West's and Cochran's serious mental illnesses and the previous pattern of violence between West and his cellmates, and that the Classification Does "ignored and overruled" a recommendation by custodial staff that West be housed in a single cell. *See* FAC ¶¶ 34, 36–38. But Miles' allegations against the Deputy Does, Medical Does, and Supervisor Does are largely conclusory. Miles shall file an amended complaint by July 25, 2023.

I turn now to the substantive issues raised by the County defendants in their motion to dismiss.[4]

## IV.    THE SECTION 1983 CLAIMS

### A.    Failure to Protect – Eighth Amendment (Claim Two)

Miles asserts that all of the Doe defendants failed to protect West in violation of the Eighth Amendment. FAC ¶¶ 66–79. The heart of Miles's claim is that:

> Defendants knew that Decedent suffered from a serious mental illness, Defendants knew that Decedent had two felonies, was had [*sic*] a history of violent physical crime, had a history and developed a pattern of fighting with any and every cellmate Defendants intentionally housed with him at SRJ, Defendants knew that Cochran suffered from mental illness severe enough to render him incompetent, and Defendants knew that Cochran had a history of violent physical crime. Further, Defendants knew that there was space at SRJ to house Decedent in a single cell. Because it was obvious, Plaintiff contends that Defendants knew that Decedent would continue to engage in fights with his cellmates either in self-defense or by provocation if Defendants continued to house Decedent in a double-occupancy cell, Defendants knew that there was a substantial risk that Decedent and Cochran would violently fight if housed together in the same cell, and Defendants knew that there was a substantial risk that if Decedent and Cochran began to fight in a cell that both Decedent and Cochran would have nowhere to run to avoid the fight and that the fight had a substantial risk of resulting in serious bodily injury or death. Despite that obvious risk of harm, Defendant DOES 1-10 intentionally placed Decedent and Cochran in the same cell, then failed to monitor them.

FAC ¶ 71.

The County defendants raise several challenges to Miles's Eighth Amendment claims.

---

[4] The parties do not dispute that West was serving a jail sentence while incarcerated at Santa Rita Jail and thus the Eighth Amendment rather than the Fourteenth Amendment applies to his section 1983 claims. *See* Mot. at 4 n.2; Opp. at 8–10 (analyzing claims under Eighth Amendment); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (describing the different standards applied to claims brought by convicted prisoners under the Eighth Amendment versus pretrial detainees under the Fourteenth Amendment).

1    First, they claim that Miles pleads that West initiated the altercation with Cochran.  Mot. at 5–6.

2    Next, they argue that neither the objective nor the subjective elements of an Eighth Amendment

3    claim have been satisfied.  *Id.* at 6–10.  The County defendants are wrong on all counts.

### 1.  Miles Does Not Plead that West Initiated the Fatal Fight.

5          According to the County defendants, certain allegations in the FAC regarding West's

6    history of fighting with his cellmates show that West initiated the fight with Cochran and that

7    therefore his failure to protect claim fails.  Mot. at 5–6.  In particular, defendants point to

8    allegations that West "had a proclivity to get into fights with cellmates," FAC ¶ 23, that West

9    communicated "by his actions and threats" that he would "continue to engage in violent conduct if

10   placed in a double cell with another inmate," *id.* ¶ 34, and that West had been involved in three

11   previous fights with cellmates, *id.* ¶ 28, which—according to defendants—show that West "started

12   this fight."  Mot. at 6.  But defendants are misreading the FAC: at no point does Miles ever allege

13   that West initiated the conflict with Cochran, which Miles made clear in her opposition brief.  *See*

14   Opp. at 11 ("To be clear, Plaintiff never alleged that Decedent premeditated or intentionally

15   initiated or started any physical altercation with any inmate, including Cochran.").   Defendants'

16   assertions aside, the FAC does not establish that West initiated the fight with Cochran.

17         Because the FAC does not allege that West initiated a fight with Cochran, it does not

18   matter that courts have found that "[a]n inmate who initiates an altercation with another inmate

19   cannot properly maintain a claim that correctional officials failed to protect the initiating inmate,

20   prior to the altercation, from harm inflicted by the other inmate."  *Rosenblum v. Orange Cnty.*

21   *Sheriff Dep't*, No. 18-cv-966, 2021 WL 933750, at *11 (C.D. Cal. Feb. 10, 2021) (citing and

22   collecting authorities).  Should evidence come to light that indicates that West instigated the fight

23   with Cochran,[5] defendants may revisit this issue.

---

[5] Miles believes that there the County defendants have access to video footage which will show who
initiated the fight.  Opp. at 12.

United States District Court
Northern District of California

### 2.    Analysis of Failure to Protect Claim

"The Eighth Amendment requires prison officials to protect inmates from violence." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  A prison official's failure to protect inmates from attacks by other inmates violates the Eighth Amendment only where two requirements are met: (1) an objective component, requiring a prisoner to show that that "conditions pos[e] a substantial risk of serious harm;" and (2) a subjective component, requiring a prisoner to show that the defendant was aware of the risk and disregarded it.  *Id.*  Specifically, a prison official violates an inmate's Eighth Amendment right only if that official is "deliberately indifferent"—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably.  *Wilk*, 956 F.3d at 1147.  A fact-finder may infer subjective awareness from circumstantial evidence.  *Farmer*, 511 U.S. at 842.

Courts have found that housing particular inmates together can give rise to an Eighth Amendment claim.  In *DeLong v. Carrillo*, for instance, the plaintiff stated an Eighth Amendment claim where prison officials housed a known prison gang member with a known enemy of the gang, who was then attacked and killed by the gang member.  *See* No. 20-cv-00190, 2021 WL 4147196, at *7–8 (E.D. Cal. Sept. 13, 2021).  And in *Armstead*, the plaintiff—at the summary judgment stage—established a viable Eighth Amendment claim where Barahona, the assailant inmate, told guards "three times that he could not be placed with 'blacks'"; Barahona was in a Mexican–American gang that had an ongoing "blood feud" with African Americans; Barahona used a racial slur regarding African Americans while being led to the shared cell; the plaintiff rang the duress button after he was in the cell with Barahona; and the plaintiff, after the guards arrived, told them that he was "in harm's way" and that Barahona had already made physical contact with him, and begged not to be left in the cell.  *Armstead v. Fields*, 638 F. App'x 601, 603 (9th Cir. 2016).

Defendants assert that Miles has failed to show that Cochran demonstrated an objectively

United States District Court
Northern District of California

1  substantial risk of serious injury to West because Miles did not allege that Cochran threatened or

2  otherwise showed signs of violence towards West prior to the fight.  Mot. at 6–7.  Courts have

3  dismissed Eighth Amendment claims based on a failure to protect where the plaintiff "failed to

4  come forward with facts showing that these defendants had any reason to believe he would be

5  attacked by the assailant."  *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986); *see also Toscano*

6  *v. Lewis*, No. 12-cv-5893-EMC, 2015 WL 4940832, at *22 (N.D. Cal. Aug. 19, 2015) ("A

7  reasonable prison official could reasonably perceive that the inmate's exposure to any risk of harm

8  was not substantial in the absence of a specific threat from Mr. Ramirez."); *Labatad v. Corr. Corp.*

9  *of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) (dismissing claim where plaintiff and assailant "had

10 been in general population together for an extended period of time with no record of any threats or

11 problems between them"); *cf. Collins v. Mason*, No. 22-cv-00603, 2022 WL 12001290, at *4

12 (E.D. Cal. Oct. 20, 2022) (finding allegations that plaintiff complained to guards about

13 defendant's misconduct and that guards failed to protect him from further assaults states claim).

14 But much as County defendants insist otherwise, "the failure to give advance notice of a specific

15 threat is not dispositive" to Miles's failure to protect claim.  *Labatad*, 714 F.3d at 1161.

16      At this stage, the question that I must answer is whether Miles has alleged facts which,

17 viewed objectively and subjectively, demonstrate that Santa Rita Jail prison officials were

18 deliberately indifferent to a substantial risk that West would be harmed by being housed in a

19 double-cell with Cochran.  *Id.*  The answer is yes.  Miles has pleaded facts showing that the

20 Classification defendants knew that: West suffered from serious mental health illnesses, including

21 schizophrenia, bipolar disorder, and depression, which had led him to be placed in a special mental

22 health housing unit, *see* FAC ¶¶ 16, 18, 22; West had exhibited signs of "serious mental illness"

23 and "bizarre behavior," *id.* ¶ 23; West had been involved in several fights with previous cellmates,

24 *id.* ¶ 28; Cochran suffered from "serious mental illness" and had a "violent criminal history

25 stemming back at least ten years," *id.* ¶¶ 37–38; West had requested to be housed in a single cell,

26 *id.* ¶ 34; custodial staff had recommended that West be placed in a single cell, *id.*, and there was

27 space for West to be housed in a single cell.  *Id.* ¶ 32.  The Classification defendants nonetheless

28 "ignored and overruled the recommendation" and placed West and Cochran in a double-cell

14

United States District Court
Northern District of California

1   together.  *Id.* ¶¶ 36, 38.  Within hours of being housed together, Cochran strangled, beat, and

2   killed West.  *Id.* ¶ 39.  At this early stage, and drawing all reasonable inferences in Miles' favor,

3   these allegations suffice to demonstrate that the Classification defendants knew of facts supporting

4   an inference and drew the inference of a substantial risk to West if he continued to be double-

5   celled with other inmates.

6            The fact that double-celling inmates with mental illnesses may under certain circumstances

7   be constitutionally permissible does not change my conclusion.  *See* Mot. at 7–8 (citing cases); *see*

8   *also Morales v. City of N. Las Vegas*, 272 F. Supp. 3d 1216, 1222–23 (D. Nev. 2017) ("[D]ouble-

9   celling an inmate with mental health issues, without more, is not constitutionally impermissible.").

10  This is because Miles' failure to protect claim is not rooted in the premise that housing inmates

11  with mental illnesses together alone violates the Eighth Amendment.  Rather, as described above,

12  Miles has alleged facts particular to West and his mental health needs, including the fact that at

13  least one or more custodial staff members at Santa Rita Jail recommended that West be placed in a

14  single cell and the Classification defendants intentionally ignored and overrode that

15  recommendation.

16           I conclude that Miles has stated an Eighth Amendment claim against the Classification

17  defendants based on their failure to protect West.  Miles has not, at this point, alleged sufficient

18  facts to demonstrate that the other Doe defendants were deliberately indifferent to a substantial

19  risk that West would be harmed by being housed in a double-cell with Cochran.

20           **B.       Denial of Familial Relationship - Fourteenth Amendment (Claim 1)**

21           Miles asserts that Does 1–10 violated her substantive due process right to familial

22  association by double-celling West and Cochran together, failing to provide adequate mental

23  health treatment for West, and failing to adequately monitor cells and inmates' well-being at Santa

24  Rita Jail, which—according to Miles—led to West's death.  FAC ¶ 59.  The County defendants

25  argue that Miles' substantive due process claim fails because the allegations do not "shock the

26  conscience."  Mot. at 10.  In particular, defendants contend that because the FAC does not show

27  that the officers were deliberately indifferent, the FAC "definitely cannot meet the even hire [*sic*]

28  standard for a familial association claim."  *Id.* at 11.  I disagree.

15

1          Parents have "a Fourteenth Amendment liberty interest in the companionship and society

2   of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citation omitted).

3   Official conduct that "shocks the conscience" in depriving parents of that interest is cognizable as

4   a violation of due process. *Id.* (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).

5   "Just as the deliberate indifference of prison officials to the medical needs of prisoners may

6   support Eighth Amendment liability, such indifference may also 'rise to the conscience-shocking

7   level' required for a substantive due process violation." *Lemire v. California Dep't of Corr. &*

8   *Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "A prison official's deliberately

9   indifferent conduct will generally 'shock the conscience' so as long as the prison official had time

10  to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* (citations

11  omitted).

12         As discussed in the failure to protect section above, I have already concluded that Miles

13  pleaded facts sufficient to demonstrate that the Classification defendants were deliberately

14  indifferent. *See* Section IV.A.2, *supra*. *Lemire* explained that a prison official's deliberately

15  indifferent conduct will generally shock the conscience so as long as the prison official had time to

16  deliberate before acting or failing to act in a deliberately indifferent manner. *Lemire*, 726 F.3d at

17  1075. There is no indication that the Classification defendants did not have time to deliberate

18  when deciding where to house West. As a result, Miles has stated a claim under the Fourteenth

19  Amendment against the Classification defendants. *Id.* at 1085 ("Because there is a triable issue of

20  fact as to whether [defendants] were deliberately indifferent . . . there is also a triable issue of fact

21  as to whether their actions rose to the conscience-shocking level required for a Fourteenth

22  Amendment substantive due process violation.")

23         **C.      Denial of Medical Care – Eighth Amendment (Claim 3)**

24         Next, Miles asserts an Eighth Amendment denial of medical care claim under section 1983

25  against Does 1–10 based on (1) the allegedly inadequate mental health care at Santa Rita Jail prior

26  to the November 2021 fight, *see, e.g.*, FAC ¶¶ 85–90, 93–104, and (2) a failure to timely summon

27  medical assistance "before, during, and after" the fight. *Id.* ¶¶ 47, 91. The County defendants

28  challenge both theories. First, defendants contend that any claim for mental health care prior to

United States District Court
Northern District of California

16

1    the attack must be dismissed for lack of administrative exhaustion or, alternatively, that Miles has

2    failed to show that the absence of such care or services actually caused serious mental injury.

3    Mot. at 11–12.  As for the second theory, defendants argue that Miles's allegations regarding

4    medical care after the fight are conclusory.  *Id.* at 12.  Defendants are mostly right: while it is not

5    appropriate to determine administrative exhaustion at this stage, I agree that Miles has not yet

6    pleaded sufficient facts to support either theory.

7         Because County defendants insist that the first theory of this claim fails for lack of

8    administrative exhaustion, *see* Mot. at 11–12, I begin by discussing the applicability of the Prison

9    Litigation Reform Act of 1995 ("PLRA").

10                        **1.      Applicability of the PLRA.**

11        The PLRA requires that prisoners exhaust administrative remedies before filing suit in

12   federal court over prison conditions.  42 U.S.C. § 1997e(a), as amended by the PLRA, provides

13   that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or

14   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

15   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA

16   "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner."  *Ross*

17   *v. Blake*, 578 U.S. 632, 639 (2016).  In a lawsuit brought by a prisoner, the alleged failure of the

18   prisoner to exhaust administrative remedies is an affirmative defense, which defendants have the

19   burden of raising and proving.  *Jones v. Bock*, 549 U.S. 199, 211–12 (2007).

20        In order to properly exhaust his or her administrative remedies, a prisoner's grievance

21   "need not contain every fact necessary to prove each element of an eventual legal claim.  The

22   primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not

23   to lay groundwork for litigation."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

24   Whether an inmate's grievance satisfies the PLRA's exhaustion requirement is determined by the

25   prison's own grievance process.  *Id.*

26        Under Title 15, section 1073 of the California Code of Regulations, California county jails

27   must "develop written policies and procedures whereby any inmate may appeal and have

28   resolved grievances relating to any conditions of confinement, included but limited to: medical

United States District Court
Northern District of California

17

care; classification actions; disciplinary actions; program participating; telephone, mail, and visiting procedures; and food, clothing, and bedding." Cal. Code Regs. Tit. 15 § 1073. The Santa Rita Jail has an "Inmate Grievance Procedure" pursuant to this policy. That procedure requires inmates to submit grievances concerning conditions of confinement in writing, using a specified form (ML-51), and follow the procedures set forth in the policy. *See* Request for Judicial Notice ("RJN") [Dkt. 28-1] at 3, Ex. B at 2, 4. The same procedure applies to requests for ADA accommodations, with the caveat that correctional staff "shall provide assistance to inmates who require assistance in understanding and completing the grievance process." *See* Request for Judicial Notice at 3, Ex. B at 5.[6] The County defendants also ask me to take judicial notice of a declaration by Caressa Barrera, an Alameda County Sheriff's Office Technician in the Grievance Unit at Santa Rita Jail, who was not able to locate any record of any grievance submitted by West over the last five years. *Id.* at 4–5; *see* Attestation of Caressa Barrera ("Barrera Decl.") [Dkt. 28-2] ¶¶ 2–4.[7]

The County defendants' efforts to dismiss this claim based on a purported failure to exhaust administrative remedies are premature because such arguments should generally be addressed at summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). A motion to dismiss under Rule 12(b)(6) for failure to exhaust should only be granted in the "rare" case where "a failure to exhaust is clear on the face of the complaint." *Id.*; *see also Smith v.*

_____

[6] I will take judicial notice of the Alameda County Sheriff's Office's Inmate Grievance Procedure "as the document is 'not subject to reasonable dispute' and 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Mangiaracina v. Penzone*, 849 F.3d 1191, 1193 n.1 (9th Cir. 2017) (quoting Fed. R. Evid. 201(b)(2)); *see also Brown v. Valoff*, 422 F.3d 926, 931 n.7, n.9 (9th Cir. 2005) (taking judicial notice of prison's Department Operations Manual and California Department of Correction Administrative Bulletin); *Rosenberg v. Cornell Corp.*, No. 07-cv-4690-PJH, 2009 WL 5069141, at *6 (N.D. Cal. Dec. 17, 2009) (taking judicial notice of facility's grievance procedures that are consistent with the BOP's regulations).

[7] The County defendants urge me to take judicial notice of the fact that West purportedly did not file a grievance at Santa Rita Jail because the County's records are not reasonably subject to dispute and because the records are properly incorporated by reference to the extent such records reflect whether an inmate exhausted their remedies under the PLRA. *See* RJN at 4–5 (citing authorities). Miles objects that the County defendants' "use of intrinsic evidence is improper" on a motion to dismiss, *see* Opp. at 7, but does not argue that the Barrera Decl. contains facts which are subject to reasonable dispute or are inaccurate. Because I do not rely on Barrera's declaration in deciding the motion, the County defendants' request for judicial notice is **DENIED AS MOOT**.

United States District Court
Northern District of California

1   *Valencia*, No. 16-cv-06577-YGR, 2018 WL 934550, at *3 (N.D. Cal. Feb. 16, 2018) (same).  This

2   is not one of the rare cases in which a failure to exhaust is clear from the complaint because—in

3   light of West's mental health issues which allegedly made him "incapable of requesting assistance

4   and care as he would if he were not suffering from a mental health crisis"—it is not clear which of

5   the County's administrative processes (if any) were "available" to him.  *See* FAC ¶ 34.

6          Multiple courts in this Circuit and other Courts of Appeals have found that a failure to

7   submit a timely grievance could be excused where a physical or mental illness rendered the

8   plaintiff unable to file the grievance in a timely fashion.  In *C.M.V.*, for example, plaintiffs argued

9   that C.M.V.'s "mental and physical impairment" following an alleged assault by other inmates

10  excused his failure to file a grievance pursuant to the Los Angeles County Jail's administrative

11  rules.  *See C.M.V., by & through Martinez v. Cnty. of Los Angeles*, No. 07-cv-5044, 2007 WL

12  9662176, at *3 (C.D. Cal. Nov. 28, 2007).  After reviewing a letter submitted by C.M.V.'s doctor

13  which described C.M.V.'s mental incapacity, the Honorable Christina A. Snyder agreed, ruling

14  that "[b]ecause C.M.V. was unable to submit a grievance, the administrative remedies at issue here

15  were not 'available' to C.M.V. within the meaning of 42 U.S.C. § 1997e(a)."  *Id.* at *4.  Other

16  courts are in accord.  *See, e.g.*, *Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017) (reversing

17  dismissal where "[t]he district court knew that Weiss was grappling with a serious mental illness

18  during the time that he was supposed to have been exhausting his administrative remedies, but the

19  defendants failed to explain to the court how he could have pursued his remedies while suffering a

20  mental breakdown requiring hospitalization . . . [g]iven the questionable state of his mental

21  stability at the time, we cannot have any confidence that administrative remedies actually were

22  available to him"); *Salzman v. Cnty. of Los Angeles*, No. 22-cv-94, 2022 WL 17078108, at *10

23  (C.D. Cal. Oct. 18, 2022) (denying motion to dismiss based on lack of administrative exhaustion

24  where "evidence in the record adequately displays Decedent's ongoing mental health issues,

25  including his belief that he was a five star general, which may have impaired his ability to

26  understand and navigate the administrative mechanisms provided.  Defendants fail to provide

27  evidence of Decedent's competence and, thereby, fail to satisfy their burden"); *Macahilas v.*

28  *Taylor*, No. 06-cv-0502, 2008 WL 220364, at *3-4 (E.D. Cal. Jan. 25, 2008) (denying motion to

United States District Court
Northern District of California

dismiss for lack of administrative exhaustion based on evidence that "plaintiff's illness and its after effects were responsible for plaintiff's inability to file his grievance in a timely fashion").  I conclude that this is not one of the "rare" cases where West's failure to exhaust is clear from the face of the complaint; defendants have not met their burden to show that the administrative process was "available" to West.

The County defendants' arguments for dismissal based on a lack of administrative exhaustion is **DENIED**.  Defendants may renew this argument, if appropriate, based on a fuller factual record.

### 2.    Showing of a Serious Mental Injury

In the alternative, the County defendants argue that Miles's denial of medical care claim based on purportedly inadequate mental health services fails because Miles has not shown "that the absence of such care or services actually caused serious mental injury."  Mot. at 12.  I disagree but find that the claim is still deficient because Miles has not yet alleged facts specifically connecting the Doe defendants to Santa Rita Jail's allegedly inadequate health services.

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Madrid v. Gomez*, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995) ("[W]hile courts will reject Eighth Amendment claims where there is no persuasive evidence that the challenged conditions lead to serious mental injury, where such injury can in fact be shown, Eighth Amendment protections clearly come into play.") (internal citations omitted).

Miles alleges facts regarding both purported deficiencies in Santa Rita Jail's provision of mental health services and how these deficiencies harmed West.  She alleges that the mental health care available at Santa Rita Jail is inadequate for several reasons, including: "[in]adequate psychotherapy without an individualized treatment plan," "no group therapy," insufficient time spent outside of cells due to the prolonged use of restrictive housing, insufficient numbers of security personnel, and insufficient numbers of mental health practitioners.  *See* FAC ¶¶ 87, 95, 97, 99, 102.  Miles also alleges that West was involved in at least three separate fights with cellmates and "Decedents [*sic*] deteriorated mental health and worsening symptoms from his lack

20

of medical care . . . contributed to his conduct in fighting with cellmates while at SRJ." *Id.* ¶¶ 28, 104. At this early stage, these allegations plausibly give rise to the inference that West was harmed by Santa Rita Jail's mental health care. But the problem is that Miles has failed to allege any specific facts connecting the Doe defendants with these particular alleged deficiencies. My ruling on this claim will await an amended pleading that addresses both the issue of administrative exhaustion and the facts that demonstrate that these particular Doe defendants were deliberately indifferent to West's serious medical needs.

### 3. Miles' Allegations Regarding Inadequate Medical Care After the Fight Are Conclusory.

The County defendants argue that Miles's allegations regarding denial of care after the fight are conclusory. Mot. at 12. Miles alleges that "[b]efore, during and after the beating, especially after finding Decedent beaten in his cell, Defendant DEPUTY DOES failed to take reasonable action and timely summon medical assistance for Decedent." FAC ¶ 47. She also alleges that "Defendant DOES 1-10 failed to provide timely medical care to Decedent WEST and failed to timely summon medical care for Decedent WEST while being housed with Cochran, despite becoming aware of his life-threatening injuries and obvious need for treatment with sufficient time to do so." *Id.* ¶ 91. These allegations do not describe the extent of delay, the circumstances surrounding that delay, or what the County employees could reasonably have done in the interim given the alleged extent of West's injuries.

Courts have dismissed similarly pleaded claims for lack of factual support. In *Estate of Nelson v. County of Alameda*, for example, the Honorable Charles Breyer dismissed a failure to provide medical care claim based on assertions that after stopping an assault by another inmate, the deputies "delayed their request to paramedics" and "failed to provide any care" while awaiting the paramedics. *See* No. 21-cv-03225-CRB, 2021 WL 4804299, at *2 (N.D. Cal. Oct. 14, 2021). Because the plaintiffs did not "provide any detail on how long the deputies 'delayed' in calling paramedics, when the paramedics arrived, or what type of care the deputies should have provided in the interim," the complaint failed to state a claim. *Id.* at *5; *see also Tamrat v. Marlowe*, No. 20-cv-07623-PJH, 2021 WL 1927445, at *2 (N.D. Cal. May 13, 2021) (dismissing claim where

United States District Court
Northern District of California

plaintiff "only presents conclusory allegations that Martin denied proper medical care without providing specific allegations how his rights were violated"); *Makoni v. Schroeder*, No. 16-cv-2497, 2017 WL 818467, at *7 (S.D. Cal. Feb. 28, 2017) ("If Plaintiff wishes to proceed with a claim for deliberate indifference to his serious medical needs based on a delay in providing him with medication, or with the refusal to provide him with medical care, he must not rely on conclusory allegations, but must allege facts which show that the Defendants knew of and deliberately disregarded his serious medical needs.").

Although this claim currently lacks sufficient facts, Miles may be able to learn of facts supporting her claim: she alleges that "much if not all [of defendants' failure to provide reasonable and timely medical care] was documented and observable by the SRJ surveillance cameras and Defendant DOES 1-10 bodyworn camera videos, and Decedent's custodial and medical files, which are not accessible to Plaintiff at this time." *Id.* ¶ 48. This claim will be **DISMISSED** with leave to amend so that Miles may allege facts demonstrating that defendants were aware of West's need for medical care and nonetheless failed to provide timely medical assistance.

### D.  Supervisor Liability (Claim 4)

Next, Miles asserts a claim for supervisory liability against the unnamed Doe supervisors based on a purported failure to adequately screen, classify, and house West and Cochran upon their arrival to Santa Rita Jail, which led them to improperly classify West as suitable for double-celling with a cellmate. FAC ¶¶ 114, 117–18. Miles also asserts that the Supervisor defendants failed to direct deputies and medical employees to intervene in the fight and to timely provide medical aid. *Id.* ¶¶ 114–15, 120. The County defendants argue that this claim is conclusory and factually unfounded. Mot. at 13.

A supervisory official is liable under section 1983 if (1) the official is personally involved in the constitutional deprivation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or

1   reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652

2   F.3d at 1207–08 (internal quotation marks and citations omitted) (alterations in original).  Thus, a

3   supervisor may "be liable in his individual capacity for his own culpable action or inaction in the

4   training, supervision, or control of his subordinates; for his acquiescence in the constitutional

5   deprivation; or for conduct that showed a reckless or callous indifference to the rights of

6   others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

7       "Conclusory allegations that various prison officials knew or should have known about

8   constitutional violations occurring against plaintiff simply because of their general supervisory

9   role are insufficient to state a claim under 42 U.S.C. § 1983." *Sullivan v. Biter*, No. 15-cv-00243,

10   2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

11   658, 691 (1978) and *Starr*, 652 F.3d at 1207).  In other words, to state a claim against any

12   individual defendant based on supervisory liability, Miles "must allege *facts* showing that the

13   individual defendant participated in or directed the alleged violation, or knew of the violation and

14   failed to act to prevent it." *Richard v. Holtrop*, No. 15-cv-5632, 2016 WL 11520620, at *5 (C.D.

15   Cal. May 12, 2016) (emphasis in original) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th

16   Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply

17   conclusions, that show that an individual was personally involved in the deprivation of his civil

18   rights.").  In *Richard*, for instance, the allegations that a supervisor "failed to make any attempt" to

19   stop a subordinate from "behaving inappropriately" and "knowingly allowed it to continue" were

20   too conclusory to state a claim for supervisorial liability.  *Richard*, 2016 WL 11520620, at *4–5.

21       Miles has not yet alleged facts demonstrating that the Supervisor defendants were either

22   personally involved in or causally connected to the constitutional deprivations that West

23   experienced.  Miles's fourth claim is **DISMISSED** with leave to amend.

24       **E.    Municipal Liability (Claims 5–7)**

25       Miles brings three claims against the County under *Monell* based on a failure to train,

26   ratification, and an unconstitutional custom, practice, or policy.  FAC ¶¶ 126–61.  The County

27   defendants argue that these claims must be dismissed because Miles "offers only boilerplate

28   recitations of various verbal formulations for *Monell* liability without ever proffering any facts

meeting these elements for liability." Mot. at 14. In her opposition, Miles provides three pages of verbal formulations of *Monell* liability without pointing to any specific facts. Opp. at 18–21. With that being said, while the second *Monell* theory lacks sufficient factual support, Miles has alleged sufficient facts to state a claim against the County based on a failure to train and an unconstitutional custom, practice, or policy.

Local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Miles must plausibly plead the following elements to state a *Monell* claim: (1) that West possessed a constitutional right of which he was deprived; (2) that the County had a policy, custom, or practice; (3) that the policy, custom, or practice amounted to deliberate indifference to West's constitutional rights; and (4) that the policy, custom, or practice was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432, 438 (9th Cir. 1997) (listing elements).

"In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Arteaga v. City of Oakley*, No. 19-cv-05725-JCS, 2020 WL 511876, at *6 (N.D. Cal. Jan. 31, 2020) (citation omitted); *see also A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (explaining that the *Twombly* and *Iqbal* pleading standard applies to *Monell* claims).

I discuss each *Monell* claim in turn below.

### 1.    Failure to Train

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Miles alleges that the County failed to properly and adequately train Does 1–10 on a multitude of issues. *See* FAC ¶¶ 129–30 (alleging that the County failed to provide adequate training on intake and screening for inmates with serious mental illness and housing and cell

United States District Court
Northern District of California

accommodations for inmates, among other things).  Although Miles has not pleaded any facts

regarding the frequency or extent of the relevant trainings for County employees with respect to

these issues, she cited portions of the April 2021 DOJ report which found that the County "fails to

provide constitutionally adequate mental health care to prisoners with serious mental health

needs."  *Id.* ¶ 132; *see also id.* ¶ 156(c) (describing several examples of inmates receiving

purportedly inadequate mental health care).

      At this early stage, and especially because the report was published just five months before

the incidents at issue here, I find that the report plausibly indicates that there was an obvious need

to provide training regarding the provision of certain mental health services and that the County's

failure to do so would likely lead to the violation of constitutional rights.  *Dougherty*, 654 F.3d at

900.  Discovery will enable Miles to learn and plead specific facts regarding the frequency and

extent of the allegedly deficient trainings at issue here.

### 2.    Ratification

      "To show ratification, a plaintiff must prove that the 'authorized policymakers approv[ed]

a subordinate's decision and the basis for it.'"  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.

1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  This requires that the

policymaker "have knowledge of the constitutional violation and actually approve of it."  *Lytle v.

Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  To state a claim for municipal liability based on

ratification, Miles must plead facts to show that (1) an authorized policymaking official (2) was

aware of the Doe defendants' allegedly unconstitutional conduct, and (3) approved their decision

and the basis for it.  *Christie*, 176 F.3d at 1239; *Lytle*, 382 F.3d at 987.

      Miles' allegations with respect to her ratification theory are conclusory.  *See* FAC ¶¶ 138–

46.  Miles does not allege who the alleged ratifier was, when this ratification occurred, or even

how this decision was ratified.  Miles simply states that certain (unspecified) acts were ratified by

an (unspecified) "final policymaker."  These conclusory allegations do not show that a final

policymaking official had knowledge of the constitutional violation and actually approved of it.

Miles's second *Monell* theory lacks sufficient facts to state a claim.

United States District Court
Northern District of California

### 3.      Unconstitutional Custom, Practice, or Policy

A municipality may also be held liable on the basis of an unconstitutional informal policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127 (internal quotation and quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted), *modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

Miles alleges that the individual Doe defendants acted pursuant to either "an expressly adopted policy" or based on a "longstanding practice or custom" of the County.   FAC ¶ 150.  She includes pages of purportedly unconstitutional customs, practices, and policies that are purportedly maintained by the supervisor Doe defendants, as well as other County policymakers and supervisors.  *Id.* ¶¶ 152–53.[8]  As with claim five, Miles cites the April 2021 DOJ report as factual support.  *Id.* ¶ 156.  The DOJ's four-year investigation into the "pattern and practice of constitutional violations in the conditions at the Santa Rita Jail . . . in its provision of public mental health services" and its conclusion in April 2021 that there was reasonable cause to believe that "Santa Rita Jail fails to provide constitutionally adequate mental health care" demonstrate, at a broad level, that there were serious and ongoing problems at Santa Rita Jail mere months before West's death.  At least some of the problems documented in the FAC describe the harm arising from the potential misclassification of inmates with serious medical or mental health needs.  *See, e.g.*, *id.* ¶¶ 156(c)(vii); 156(d).

At this early stage, I conclude that Miles has plausibly pleaded that there is an unconstitutional policy, custom, or practice which was the moving force behind the constitutional

---

[8] Miles purports to provide examples of "inadequate and deficient policies and procedures" in paragraph 153, but it is not entirely clear whether Miles is alleging that the policy is itself deficient, whether the inadequacy is based on the County failing to adhere to a formal policy, or some combination of the above. *Compare id.* ¶ 153(a) *with id.* ¶ 153(b)–(c).  In light of the sprawling nature of Miles' *Monell* allegations, Miles should plead these factual allegations with more specificity in the amended complaint.

United States District Court
Northern District of California

1   violation that West experienced.  *Plumeau*, 130 F.3d at 438.  Miles' third *Monell* claim survives.

## II.   QUALIFIED IMMUNITY

Next, the County defendants argue that all of the individual County employees are entitled to qualified immunity.  Mot. at 17–18.  The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010); *see also Greene v. Camreta*, 588 F.3d 1011, 1021 (9th Cir. 2009) (discussing the "two-step procedure" established in *Saucier*).

First, the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court decides whether the right is clearly established such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted."  *Id.* at 202.  "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' . . . meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'"  *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).  This standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft*, 563 U.S. at 743 (citation omitted).

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)).  "[T]he clearly established right must be defined with specificity."  *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020) (quoting *City of Escondido v. Emmons*, 139

United States District Court
Northern District of California

S. Ct. 500, 503 (2019)).  In some "rare" cases, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."  *Id.* (internal quotation omitted).

### A.     Defendants Violated a Constitutional Right

The first prong of the qualified immunity analysis requires me to determine whether, after taking all of Miles's well-pleaded allegations as true, Miles plausibly alleged that the individual defendants violated a constitutional right.  *Saucier*, 533 U.S. at 201.  As discussed above, Miles alleges that the Classification defendants ignored and overruled a recommendation from custodial staff that West should be placed in a single cell due to his mental health and behavioral issues; the Classification defendants placed West in a cell with Cochran, another inmate with mental health issues and a violent criminal record, even though there was space available to house West in a single cell and he and Cochran had not asked to be housed together.  FAC ¶¶ 32, 34, 37–38.  At this early stage, these allegations plausibly state a violation of the Eighth Amendment.  *See* Section IV.A.2, *supra.*  The first prong of *Saucier* is satisfied.

### B.     The Constitutional Right for an Inmate to Be Protected from Violence Was Clearly Established

The next question is whether the individual defendants violated a clearly established constitutional right.  "An inmate's right to be protected from violence at the hands of other inmates "has been clearly established since the Supreme Court's decision in *Farmer v. Brennan* in 1994."  *Rosenbaum*, 2021 WL 933750, at *9 (quoting *Wilk*, 956 F.3d at 1150 (9th Cir. 2020)) (citations omitted).  "We have recently and explicitly held that it is clearly established that prison officials must 'take reasonable measures to mitigate the [known] substantial risk[s]' to a prisoner.  *Wilk*, 956 F.3d at 1150 (alterations in original).  In 2016, the Ninth Circuit explained— in an en banc position—that the "contours" of the right in a failure to protect claim are the "right to be free from violence at the hands of other inmates."  *Castro*, 833 F.3d at 1067.[9]  Thus, to the

---

[9] To the extent that this language conflicts with *Estate of Ford*, *see* Reply at 10, *Castro* is a more recent and en banc opinion that is binding upon me.  *Compare Castro*, 833 F.3d at 1067 *with Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050–51 (9th Cir. 2002).

1    extent that it would have been clear to a reasonable prison official that there was a substantial risk

2    to West's safety by housing him with Cochran, qualified immunity is not available.

3            Taking all of Miles's well-pleaded allegations as true, Miles has alleged facts which

4    suggest that some of the individual defendants may not be entitled to qualified immunity.  That is,

5    based on Miles' allegations of West and Cochran's mental health problems and custodial staff's

6    recognition that West should be placed in a single cell, it is at least debatable that a reasonable

7    prison official would have seen a clear and substantial risk to West's safety by housing him with

8    Cochran.

9            The County defendants contend that *Estate of Ford* establishes that the individual

10   defendants are entitled to qualified immunity. Mot. at 7; Reply at 10.  I disagree.  In that case,

11   which involved an inmate with serious mental health issues killing his cellmate, the Ninth Circuit

12   concluded that the correctional officer defendants were entitled to qualified immunity for their

13   decision to house the two inmates together.  *See* 301 F.3d at 1053.  Importantly, the two cellmates

14   had "previously celled together without any problems" and "had requested to cell together on this

15   occasion."  *Id*.  These facts suggested that "Ford was *safer* for Diesso to be celled with than

16   anyone else as they had been celled together before without a problem, and both wanted to be

17   celled together again."  *Id.* at 1052 (emphasis in original).  *Estate of Ford* is thus distinguishable:

18   Miles expressly alleges that "Decedent had never previously been housed safely with Cochran and

19   Decedent never requested to be housed with Cochran."  FAC ¶ 38.

20           It is too soon to tell whether a reasonable correctional officer would have understood that

21   there was a substantial risk to West's safety by housing him in a double-cell with Cochran.

22   Defendants may reassert this defense after the complaint is amended or on a fuller factual record.

23   **III.    THE ADA CLAIM (CLAIM 8)**

24           As with the denial of medical care claim, there appear to be two bases for Miles' ADA

25   claim against the County: (1) the deficient services at Santa Rita Jail for inmates such as West

26   housed in Housing Unit 9, and (2) the County's failure to provide care with respect to West's

27   interactions with Cochran.  I conclude that Miles has stated an ADA claim under her first theory

28   but that the second theory is factually deficient.

United States District Court
Northern District of California

Miles alleges that the County violated the ADA by failing to provide West with a reasonable accommodation for his bipolar disorder, schizophrenia, and depression. According to Miles, County employees placed West in Housing Unit 9 specifically because of his mental health disability. FAC ¶ 171. Although community-based organizations provide various programs to inmates housed in general population at Santa Rita Jail, these programs are not available or have limited availability to Housing Unit 9 inmates. *Id.* ¶ 173. Inmates housed in Housing Unit 9 receive only one program, "Breaking the Chains," which is limited to the topic of substance use disorder. *Id.* ¶ 174. Thus, Miles claims that the County "denied inmates access to programs and treatment specifically because of their mental health abilities." *Id.* ¶ 176; *see also id.* ¶¶ 180–81 (alleging that the County "relies unnecessarily on segregated lockdown housing exclusively for and specifically because of inmates' mental health disabilities" and that the County "failed to provide benefits, programs, and activities necessary for Decedent's mental health treatment such as a private location and therapeutic environment").

Miles also alleges that the County violated the ADA by failing to provide West with "reasonable accommodation to his known qualifying disability in their interactions with Decedent as alleged herein including by its failure to provide adequate medical care to Decedent both before, during and after the vicious attack as alleged herein." *Id.* ¶ 179. This theory seems to rest on the assertions that housing West with Cochran was unsafe in light of West's disability and that the County's refusal to give West a single-cell is a form of discrimination.

The County responds that the ADA claim must be dismissed for lack of standing, lack of factual support, and because Miles has not shown that West exhausted his administrative remedies under the PLRA. Mot. at 19–20. I address each issue in turn below.

**A.     Standing Under the ADA**

The County asserts that Miles lacks standing to pursue a claim under the ADA because she does not qualify for injunctive relief or damages. Mot. at 19. According to the County, Miles does not qualify for injunctive relief because West has passed away, and thus "there is therefore no reason to believe the parties before the Court will require the requested accommodation in the

future." *Id.*[10]  The County contends that damages are not available under the ADA because Miles does not identify any prior request for accommodation by West or that a County employee was deliberately indifferent to such a request.  *Id.*  The County's arguments regarding standing rest on the underlying argument that Miles has not shown that the elements of an ADA claim are met.

### B.    Analysis of the ADA Claim

Pursuant to Title II of the ADA, a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (quoting *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  "Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'"  *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

"While the regulations promulgated under Title II provide a framework for analyzing ADA claims generally," the Ninth Circuit has explained that "inmates' rights must be analyzed 'in light of effective prison administration.'"  *Id.* at 1216 (quoting *Gates v. Rowland*, 39 F.3d 1439, 1446 (9th Cir. 1994)).  *Gates* provides that an inmate's ADA claim must be evaluated under the

---

[10] Although Miles does not respond to the County's argument about standing for injunctive relief, she does not seek injunctive relief under the ADA.  *See* FAC ¶ 185 (seeking damages and attorneys' fees under the ADA); *see also id.* at Prayer for Relief (seeking monetary damages).

"reasonable relation" standard articulated in *Turner v. Safley*, 482 U.S. 78, 89 (1987).[11]  *Id.*

"Under *Turner*, a regulation that would impinge on inmates' constitutional rights is nevertheless

valid if it is reasonably related to the prison's legitimate interests."  *Id.*  Thus, to the extent that

Miles is challenging a Santa Rita Jail regulation that impinged on West's rights, Miles must show

that the challenged prison policy or regulation is unreasonable.  *Id.* at 1216–17.[12]

Putting *Turner* to the side, Miles has stated a *prima facie* claim under the ADA based on

the first theory—lack of access to mental health services for inmates in Housing Unit 9.  "Quite

simply, the ADA's broad language brings within its scope anything a public entity does."  *Lee v.

City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotation marks and quotation

omitted).  "[M]ental health services and other activities or services undertaken by law enforcement

and provided by correctional facilities to those incarcerated are 'services, programs, or activities of

a public entity' within the meaning of the ADA."  *Id.* (quotation omitted).  Miles alleges that: (1)

West had qualifying mental health disabilities, including bipolar disorder, schizophrenia, and

depression, *see* FAC ¶ 168; (2) West was denied the benefits of mental health services and

programming available to other Santa Rita Jail inmates, *see id.* ¶¶ 173–76, and (3) West was

denied access to these benefits due to his placement in Housing Unit 9, which stemmed from his

underlying mental disability, *see id.* ¶ 171.  These allegations state a *prima facie* claim.  *Duvall*,

260 F.3d at 1135.

To secure monetary damages for her ADA claim, Miles must further prove that the County

acted with deliberate indifference.  *Duvall*, 260 F.3d at 1138.  Deliberate indifference requires: (1)

"knowledge that a harm to a federally protected right is substantially likely" and (2) "a failure to

---

[11] While *Gates* involved a claim under the Rehabilitation Act, not the ADA, the Ninth Circuit has applied the *Turner* standard to ADA claims brought by inmates involving correctional facilities.  *See, e.g., Pierce*, 526 F.3d at 1216–1217 & 1216 n.29; *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1069 (9th Cir. 2010).

[12] Although the County raised this issue in its motion, *see* Mot. at 21, Miles does not address *Turner* in the FAC or in her opposition brief.  This failure is not dispositive because it is not entirely clear whether Miles is alleging that the County's failure to provide programming was the result of a Jail policy or regulation.  If so, then the parties are advised to address *Turner* in the next round of briefing.

United States District Court
Northern District of California

act upon that likelihood." *Id.* at 1139.  The first prong is satisfied when the plaintiff has alerted the public entity to his need for accommodation or where the need for accommodation is obvious, or required by statute or regulation.  *Id.*  The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act.  *Id.* at 1139–40.   At this early stage, I find that the DOJ report sufficiently demonstrates that the County defendants were deliberately indifferent.  Miles alleges that the DOJ concluded in April 2021 that "Santa Rita Jail violates the ADA by denying prisoners with mental health disabilities access to services, programs, and activities because of their disabilities."  FAC ¶ 156(a).  Thus, the report plausibly demonstrates that the need for these programs and activities was obvious as of April 2021, and yet by November 2021, they were still not available to West.  Thus, Miles has stated an ADA claim based on the lack of access to mental health services for inmates in Housing Unit 9.

As for the second theory—that the County's failure to provide West with a single occupancy cell violated the ADA—this does not clearly map on to an ADA claim.  But even if I assume that a single occupancy cell constitutes a "service, program, or activity" within the meaning of the ADA, Miles must allege that the "exclusion, denial of benefits, or discrimination was by reason of his disability."  *Duvall*, 260 F.3d at 1135; *see also Regal v. Cnty. of Santa Clara*, No. 22-cv-04321-BLF, 2023 WL 2266135, at *7 (N.D. Cal. Feb. 27, 2023) (dismissing ADA claim for lack of facts "suggesting that the County denied Regal treatment or other benefit *because of* his disability") (emphasis in original).  Miles has not alleged that West was denied a single occupancy cell *because of* his mental illness.  Miles does not allege, for instance, that there were no single occupancy cells at Housing Unit 9.  In fact, according to the FAC, "[m]any housing units [at Santa Rita Jail] include both single and double occupancy cells."  FAC ¶ 33.  Without showing that the County's refusal to provide West with a single occupancy cell flowed from his mental illness, Miles has missed a critical step in her ADA claim.  Thus, this second theory fails for lack of sufficient facts to support the third element.

### C.    Compliance with the PLRA

The County also argues that the PLRA bars the ADA claim because Miles did not allege a preexisting physical injury and because Miles did not allege compliance with the PLRA.  Mot. at

19–20.  Miles replies that she does not need to show compliance because "this action was not brought by a prisoner confined in a jail—it was brought by Decedent's surviving mother.  Thus, Defendant's contention that PLRA applies is misplaced."  Opp. at 22.  Miles is wrong: the PLRA applies to this claim, but further facts are needed before I can determine the existence of a preexisting physical injury and address administrative exhaustion.[13]

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This showing of physical injury does not need to be significant but must be more than *de minimus*. *Pierce*, 526 F.3d at 1223–24.  The PLRA applies to ADA claims.  *Id.* at 1224.

Miles incorrectly asserts that the PLRA does not apply to this claim because Miles, not West, is the plaintiff.  Opp. at 22.  Miles does not cite any authority to support this proposition. The County defendants, on the other hand, cite California cases explaining that a survivorship plaintiff "stands in the shoes" of a decedent, and "[i]f one injured by a tortious act may not himself recover from the tort-feasor, then it follows that under established law governing wrongful death actions, his survivors may not recover in . . . such an action.'"  *Salin v. Pac. Gas & Elec. Co.*, 136 Cal. App. 3d 185, 192–93 (1982) (internal quotation marks omitted); *see also Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 763 (1990) ("A wrongful death plaintiff is subject to any defenses which the defendant could assert against the decedent"); *see also C.M.V.*, 2007 WL 9662176, at *5 & *5 n.4 (noting that the PLRA's exhaustion requirement would apply to child's guardian after she became the guardian ad litem).  The PLRA applies to this claim.

Although Miles does not assert that West experienced a preexisting physical injury, she may be able to overcome this hurdle.  Miles alleges that West was involved in fights with his cellmates because of the inadequate mental health care that he received.  *See* FAC ¶¶ 28, 104.  The FAC does not include any facts regarding any injuries that West may have sustained during those

---

[13] As explained in Section IV.C.1, *supra*, the County defendants' arguments related to administrative exhaustion are premature because it is not yet clear which administrative remedies were "available" to West.

United States District Court
Northern District of California

1    fights, but it is possible that he sustained injuries which would satisfy this requirement.  Miles may

2    wish to address this issue in the amended complaint.

3    **IV.    STATE LAW CLAIMS (NEGLIGENCE AND BANE ACT)**

4           Finally, the County defendants argue that the state law claims for negligence and violation

5    of the Bane Act must be dismissed because both the County and its employees are entitled to

6    statutory immunities.  Mot. at 21–23.  Defendants also assert that these claims are factually

7    deficient.  *Id.* at 23–25.  Most of these claims are factually deficient for most of the Doe

8    defendants and will be dismissed with leave to amend.  The County is immune to both claims

9    except to the extent that the negligence claim is based in the County employees' purported failure

10   to summon immediate medical care.  I will defer ruling on the applicability of the other

11   immunities until Miles has fleshed out the factual bases for her claims.

12          **A.    The Negligence Claim (Claim 9)**

13          Miles' negligence claim is brought against all defendants.  She asserts that the individual

14   defendants have a duty to use reasonable care to prevent harm or injury to inmates in their care or

15   custody, and that the individual defendants breached this care by: (a) failing to properly and

16   adequately screen and assess inmates for appropriate housing placements; (b) failing to intervene

17   to protect West from Cochran; (c) failing to perform proper and timely cell checks; (d) failing to

18   immediately summon medical care for West after Cochran attacked him; (e) failing to properly

19   train and supervise the defendants with respect to proper housing and treatment of individuals with

20   mental illness; (f) failing to train officials to identify the indications of persons with serious mental

21   health issues; (g) failing to train officials to properly communicate the existence of mental health

22   issues; (h) failure to staff properly; (i) failing to protect West from harm, and (j) failing to follow

23   County policy and basic training.  FAC ¶¶ 187, 188(a)–(j).

24          In California, a public entity is not liable for an injury arising from an act or omission of

25   the public entity or a public employee except as provided by statute.  Cal. Gov. Code § 815.

26   "Thus, a common law negligence claim may not be asserted against the County."  *Doe v. Los*

27   *Angeles Cnty. Dep't of Child. & Fam. Servs.*, 37 Cal. App. 5th 675, 686 (2019), *as modified* (July

28   18, 2019) (citing *Becerra v. Cnty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1457 (1998).  In this case,

1    Miles seeks to impose liability on the County pursuant to Government Code section 815.2(a),

2    which provides, under certain circumstances, for the entity's vicarious liability for acts or

3    omissions of employees.  FAC ¶ 191.

4         The County defendants argue that Miles has failed to state a claim for negligence against

5    either the County or its employees because of various immunities and because Miles's "negligence

6    claim, like her constitutional claim, is predicated upon an alleged failure to protect," but "in the

7    absence of a 'special relationship,' there is no duty to protect others from intentional torts at state

8    law." Mot. at 23–24.  Defendants argue that Miles has not pleaded facts sufficient to demonstrate

9    a special relationship to each individual defendant, nor has she shown that the harm that Cochran

10   inflicted was sufficiently foreseeable.  *Id.* at 24.

11        To prevail in a negligence action, a plaintiff must show that the defendant owed a legal

12   duty, the defendant breached that duty and the breach proximately caused injury to the plaintiff.

13   *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 396 (2009) (citation omitted).  California

14   "imposes a heightened duty of care of jailers . . . due to prisoners' increased vulnerability while

15   incarcerated."  *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016) (citation omitted).  This

16   special relationship between a jailer and a prisoner gives rise to a duty of care to protect the

17   prisoner from foreseeable harm inflicted by a third party.  *Giraldo v. Dep't of Corr. & Rehab.*, 168

18   Cal. App. 4th 231, 246 (2008); *Matysik v. Cnty. of Santa Clara*, No. 16-cv-06223-LHK, 2018 WL

19   732724, at *8 (N.D. Cal. Feb. 6, 2018) ("The special-relationship exception applies when a state

20   takes a person into its custody and holds him there against his will.") (internal quotation marks and

21   quotation omitted).  "Prison officials therefore owe a duty of reasonable care to protect prisoners

22   and detainees from foreseeable harm."  *Weaver v. City & Cnty. of San Francisco*, No. 14-cv-

23   03654-LB, 2016 WL 913372, at *11 (N.D. Cal. Mar. 10, 2016) (citation omitted).  Because the

24   individual County defendants appear to be correctional staff, *see* FAC ¶¶ 7–12, they owed West a

25   duty of care to protect him from foreseeable harm.  *Giraldo*, 168 Cal. App. 4th at 246.

26        The problem is that Miles has not alleged sufficient facts to show that the individual

27   defendants—with the exception of the Classification defendants—breached that duty of care.

28   Miles must plausibly allege that the individual Doe defendants would have understood that the

United States District Court
Northern District of California

36

1  harm arising from housing West with Cochran was foreseeable.  Based on my analysis of the

2  Eighth Amendment claim, I find that Miles has met her burden with respect to the Classification

3  defendants.  *See* Section IV.A.2, *supra*.  In the absence of specific facts regarding the other Doe

4  defendants, though, Miles has not pleaded that any other Doe defendant breached their duty of

5  care to West.

6  **B.**      **The Bane Act Claim (Claim 10)**

7          Miles' Bane Act claim is also brought against all defendants.  Miles alleges that the

8  individual defendants violated Miles' and West's constitutional rights "by failing to protect

9  Decedent from being murdered by his cellmate, by failing to timely provide medical care to

10  Decedent, and by failing to properly screen and classify Decedent and Cochran to prevent

11  Decedent from being housed with a dangerous cellmate," and that the County is vicariously liable

12  for these wrongful acts.  FAC ¶¶ 198, 201.

13          California Civil Code section 52.1 (the "Bane Act") creates "a cause of action for

14  violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or

15  coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting

16  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)).  The Bane Act therefore

17  requires pleading "both a constitutional violation and that the violation was brought about

18  by threats, intimidation, or coercion."  *Sandoval v. Cnty. of Sonoma*, No. 11-cv-05817-TEH, 2016

19  WL 612905, at *2 (N.D. Cal. Feb. 16, 2016), *aff'd*, 912 F.3d 509 (9th Cir. 2018); *see also Monzon*

20  *v. City of Murrieta*, 978 F.3d 1150, 1165 (9th Cir. 2020) ("Lastly, plaintiffs' Bane Act claim fails

21  because the officers did not interfere or attempt to interfere with any constitutional rights using

22  threats, intimidation, or coercion.").

23          The County defendants argue that Miles's Bane Act claim fails because Miles "does not

24  identify any County employee who threatened, intimidated, or coerced Decedent."  Mot. at 24–25.

25  Miles responds that "for the same reasons Plaintiff's Eighth Amendment claims survive, so does

26  the Bane Act."  Opp. at 25.  Miles does not address the need to allege that a defendant interfered

27  with constitutional rights using threats, intimidation, or coercion.  Because she has not done so,

28  this claim will be dismissed with leave to amend.

United States District Court
Northern District of California

C.    **Immunity**

California law offers different kinds of immunities for public entities and for public employees.  As a result, I address the claims against the County and the County employees separately.

1.    **The County Is Largely Immune to the State Law Claims.**

Under California law, the County is largely immune to the negligence and Bane Act claims.  California Government Code section 844.6, titled "Injuries by and to prisoners," provides that "a public entity is not liable for: (1) an injury proximately caused by any prisoner.  (2) An injury to any prisoner."  Cal. Gov't Code § 844.6(a); *see also Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1038 (C.D. Cal. 2015) ("[S]ection 844.6 accords broad public entity immunity").

The immunity offered under section 844.6 broadly applies to any claim stemming from an injury to a prisoner, except for the statutory exceptions provided for in section 844.6(a).  *See, e.g.*, *Badiggo v. Cnty. of Ventura*, 207 Cal. App. 3d 357, 361–62 (1989) (applying immunity to derivative loss of consortium claim); *Lowman v. Cnty. of L.A.*, 127 Cal. App. 3d 613, 615–17 (1982) (applying immunity to wife's wrongful death claim arising out of husband's death).  This immunity generally precludes claims for negligence, as asserted in Miles's ninth claim.  *See, e.g.*, *Est. of Nelson*, 2021 WL 4804299, at *7 ("Plaintiffs' negligence claim against Alameda County falls squarely within the scope of § 844.6, as Plaintiffs seek to hold a public entity liable for an injury to a prisoner."); *Wright v. State of Cal.*, 122 Cal. App. 4th 659, 672 (2004) (holding public entities immune for alleged negligence in providing medical care).  This immunity also applies to Bane Act claims.  *See Towery v. State of California*, 14 Cal. App. 5th 226, 233 (2017) ("The Bane Act does not override statutory immunities").

In her opposition, Miles argues that—notwithstanding the immunity offered through section 844.6—the County is vicariously liable under section 815.2(a).  Opp. at 23.  But "the specific immunities set forth in § 844.6 supersede the 'general liability' provisions of § 815.2." *Est. of Nelson*, 2021 WL 4804299, at *7 n.10 (citing *Wright*, 122 Cal. App. 4th at 671–72). Section 844.6(a)(2) bars vicarious liability against the County for its employees.  *Id.* at *7 & *7 n.10 (rejecting argument that Alameda County was vicariously liable because section 844.6

provided immunity).

Although neither party addresses this point, section 844.6's provision of general immunity has a narrow carveout that is relevant here.  Under section 845.6, both a public employee *and* the public entity are liable where the employee, acting within the scope of his or her employment, "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such care."  Cal. Gov't Code § 845.6; *see also Est. of Nelson*, 2021 WL 4804299, at *9 (same).  "Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care."  *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013).  "Thus, section 845.6 creates out of the general immunity a limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only."  *Id.* (emphasis in original).  Under section 845.6, then, to the extent that Miles's state law claims are grounded in a purported failure to summon immediate medical care, *see* FAC ¶ 188(d), the County is not shielded by immunity.[14]

The ninth and tenth claims against the County are **DISMISSED.**  Miles is given leave to amend so that she may allege facts to support her theory that defendants failed to summon immediate medical care following the fight.

### 2.    The County Defendants

The County defendants invoke seven different statutory immunities which, according to defendants, shield them from liability for the negligence and Bane Act claims.  Mot. at 22–23.  It is too soon to tell whether and how these statutory immunities overlap with or foreclose the theories underlying Miles' state law claims.  Once Miles has clarified the factual bases for her claims against the individual Doe defendants, the County defendants may reassert these arguments.

### CONCLUSION

For the foregoing reasons, I **GRANT IN PART and DENY IN PART** the motion to

---

[14]  The claims are dismissed even though the County is not immune because Miles has not pleaded sufficient facts to state a claim for denial of medical care.  *See* Section IV.C.3, *supra*.

United States District Court
Northern District of California

dismiss as follows:

- To the extent that Miles brings Claims 5 through 7 as wrongful death actions, these are **DISMISSED without leave to amend**;

- Miles has stated a claim under the Eighth Amendment against the Classification defendants based on their failure to protect West (Claim 2);

- Miles has stated a claim under the Fourteenth Amendment against the Classification defendants based on their interference with her familial relationship (Claim 1);

- Miles has stated a *Monell* claim based on the failure to train and an unconstitutional custom, practice, or policy, but has not stated a claim with respect to ratification (Claims 5–7)

- Miles has not alleged sufficient facts for claims 3–4 and 10, so those will be **DISMISSED** with leave to amend;

- Miles has stated a negligence claim against the Classification Doe defendants based on their failure to protect West (Claim 9); and

- The County is entitled to statutory immunity for the negligence and Bane Act claims except insofar as Miles claims that a County employee knew or had reason to know that West was in need of immediate medical care and failed to take reasonable action to summon such care.

The Complaint otherwise is **DISMISSED** with leave to amend.  Miles shall file an amended complaint no later than July 25, 2023, to name the alleged Doe defendants, address the factual deficiencies identified in this Order, and provide information regarding the exhaustion of administrative remedies or lack thereof.

       **IT IS SO ORDERED.**

Dated: April 3, 2023

William H. Orrick
United States District Judge