UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTY MILES,<br><br>                    Plaintiff,<br><br>          v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>                    Defendants. | Case No.  3:22-cv-06707-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 72 |

This lawsuit was filed by Christy Miles, the mother of 27-year-old Devin West, who was beaten and strangled to death by his cellmate at Santa Rita Jail in Alameda County in 2021.  I previously granted Miles leave to amend some of her claims and permitted her to engage in limited discovery to ascertain the identities of various Doe defendants.  She has now repleaded many claims and identified twenty individuals from the jail—including deputies and medical staff, among others—that she says played a role in violating her and West's rights before, during, and after his death.  Those individual defendants moved to dismiss all claims against them.

Based on the arguments made, this Order finds that Miles sufficiently stated claims for violations of the Eighth and Fourteenth Amendment as well as for state law negligence and violation of California's Bane Act against twelve individual defendants.  She has leave to amend her pleadings once more to plausibly allege claims against the other eight defendants, to the extent possible.

## BACKGROUND

### I.      FACTUAL BACKGROUND

In the operative Second Amended Complaint ("SAC"), Miles asserts many of the same facts as those in the First Amended Complaint and also adds details as well as names of many Doe

defendants.  SAC [Dkt. No. 49].  This Order assumes familiarity with the facts in the prior order granting the first motion to dismiss, ("Prior Order") [Dkt. No. 42], and recounts additional relevant allegations.  The named and identified officials from the Santa Rita Jail and Alameda County include:

The "Classification" defendants:  Deputy Doe Smith, SAC ¶ 7; Deputy Doe Mitchell, *id.* ¶ 8; Deputy Crispino Gabriel, *id.* ¶ 9; Deputy Marc Solopow, *id.* ¶ 10; Deputy Daniel Sablan, *id.* ¶ 11; and Deputy Bryan Kiss, *id.* ¶ 12;

The "Supervising" defendants:  Supervising Lieutenant Kenneth Gemmell, *id.* ¶ 17; Supervising Sergeant Devin Lorier, *id.* ¶ 18; Supervising Sergeant Victor Galindo, *id.* ¶ 19;

The "Medical" defendants:  Forensic Behavioral Health Clinician and Social Work Supervisor Tara Rocker, *id.* ¶ 20; Dr. Maria Magat, *id.* ¶ 25; Nurse Carol Stevenson, *id.* ¶ 26; Nurse Mira Yune, *id.* ¶ 27; Dr. Elias Aboujaoude, *id.* ¶ 29; Dr. Teresita Pontejos-Murphy, *id.* ¶ 30; and Dr. Jennifer McQuade, *id.* ¶ 31;

And four defendants who are not clearly categorized in the SAC:  Deputy Daniel Herrera, *id.* ¶ 13; Deputy Michael Teves, *id.* ¶ 14; Deputy Malik Jackson, *id.* ¶ 15; and Housing Unit Technician Terrell Santiago, *id.* ¶ 16.

As relevant to the issues raised in the parties' briefing and discussed in this Order, the SAC asserts that West was a 27-year-old African American man who suffered from bipolar disorder, schizophrenia, and depression at the time of his death at the jail.  *Id.* ¶¶ 4, 37.  He was housed in Santa Rita Jail's mental health housing unit.  *Id.* ¶¶ 55, 56.  He was also placed on the "Inmate Observation Log," a "form of suicide watch."  *Id.* ¶ 68.

Miles alleges that West's mental health conditions caused him to verbally provoke and disturb people, including jail staff and inmates.  *See, e.g.*, *id.* ¶¶ 68, 92.  Miles asserts that because of West's mental health conditions, which aggravated other inmates and caused them to physically attack him, West needed to be housed in a single cell with no cellmates for his own safety.  *See, e.g.*, *id.* ¶ 72.  She says that West was attacked by inmates on four separate occasions during a prior incarceration in 2020, and that this was noted in his file.  *Id.* ¶ 52.  After arriving at Santa Rita jail in fall of 2021, West was attacked by cellmates on five separate occasions in a six-week

period. *Id.* ¶¶ 59, 61, 63, 65, 67.  But jail officials failed to house West in a single cell. *See id.* ¶¶ 60, 62, 64, 66, 68.

Specifically, Miles alleges that Smith conducted West's intake and Mitchell conducted West's booking on September 22, 2021. *Id.* ¶¶ 7-8, 50.  Despite access to West's files during that process, *id.* ¶ 48, and knowledge of his prior attacks and his mental health issues, *id.* ¶¶ 51-52, 55, they did not ensure he was housed in a single cell, *id.* ¶¶ 48, 51-53, 56.

Miles also alleges that within two days of West's arrival at the jail, Pontejos-Murphy, McQuade, and Aboujaoude medically evaluated him, and each defendant noted that West had severe mental illnesses. *Id.* ¶ 49.  None ensured that he was housed by himself. *Id.* ¶¶ 55-57.

Two days later, Stevenson also medically evaluated West, and Rocker conducted a behavioral health assessment. *Id.* ¶ 50.  Those evaluations found that West had "unpredictable behavior," "an altered mental state," "mental and development disability," and other mental health conditions. *Id.* ¶ 51.  Neither Stevenson nor Rocker ensured that West was housed in a single cell. *Id.* ¶¶ 51, 55-57.

Lorier learned about one of the incidents where West was attacked by a cellmate, and he added a "Keep Separate" note to West's record. *Id.* ¶ 61.  Lorier also knew that Emil Cochran, the cellmate who beat and strangled West to death, was violent. *Id.* ¶ 95.  Sablan also knew that Cochran had attacked another inmate. *Id.* ¶ 87.  Despite their knowledge of the safety risks, neither Lorier nor Sablan took actions to ensure that West was alone; indeed Sablan chose to move Cochran to West's cell. *Id.* ¶ 89.

Miles alleges that each of these defendants—Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker, Lorier, and Sablan—knew that West should be housed separately from other prisoners, including Cochran, for his safety, but failed to ensure that he was, and some defendants even went so far as to ignore recommendations that he should be housed separately. *See id.* ¶¶ 51-54, 60, 62, 64, 66, 82.

She also asserts that Herrera, Teves, and Jackson were the on-duty deputies in the mental health housing unit the night that West was killed, and they were the ones responsible for protecting West. *Id.* ¶¶ 13-15, 98.  According to Miles, these deputies knew that prisoners in that

3

unit required health and safety checks every 15 to 30 minutes.  *Id.* ¶¶ 71, 79.  They also knew that West was housed with Cochran and that Cochran was violent.  *Id.* ¶ 97.  Despite that knowledge, they intentionally failed to perform those checks on the night of November 14 and the early morning of November 15, during the period in which Cochran attacked West.  *Id.* ¶¶ 71, 101-02, 117, 128-29.  They later falsified records to make it look like they conducted the checks.  *Id.* ¶ 102.  Miles says these records are false because the fight lasted more than thirty minutes and could be heard throughout the cell block, so if the deputies had done their checks, they would have heard it.  *Id.* ¶¶ 103-07, 110.

According to Miles, Teves responded to the attack about an hour after it began.  *Id.* ¶ 117. He radioed Jackson and Herrera for assistance and took no action as he waited for them.  *Id.*  The three deputies watched Cochran continue attacking West "for an appreciable period of time" until "[f]inally" they opened the cell door.  *Id.* ¶¶ 119-20.  Rather than entering the cell, pulling Cochran off West, or using any kind of force—including lethal force, which Miles alleges would have been appropriate—the deputies continued to watch the attack until Jackson eventually withdrew his taser.  *Id.* ¶¶ 120-22.  They did not enter the cell to physically check West's health or safety until Cochran voluntarily released his chokehold on West's neck.  *Id.* ¶¶ 121-23.  By the time the deputies entered the cell, West was "unresponsive," "cyanotic," and "blue and cold to the touch."  *Id.* ¶¶ 123-24.  He died from those injuries.  *Id.* ¶¶ 4, 123.

Miles asserts many other conclusory and general allegations about the other individual moving defendants.  They and other allegations are discussed throughout this order.

## II.    PROCEDURAL BACKGROUND

Miles now brings the following nine claims: (1) interference with familial relationship and Due Process violation under the Fourteenth Amendment and 42 U.S.C. § 1983, against Smith, Mitchell, Gabriel, Solopow, Sablan, Kiss, Herrera, Teves, Jackson, Santiago, Gemmell, Lorier, Galindo, Rocker, Magat, Stevenson, Yune, Aboujaoude, Pontejos-Murphy, McQuade, and Does 1-10, SAC ¶¶ 143-53; (2) failure to protect in violation of the Eighth Amendment and 42 U.S.C. § 1983, against Smith, Mitchell, Gabriel, Solopow, Sablan, Kiss, Herrera, Teves, Jackson, Santiago, Gemmell, Lorier, Galindo, Rocker, Magat, Stevenson, Yune, Aboujaoude, Pontejos-

United States District Court
Northern District of California

Murphy, McQuade, and Does 1-10, *id.* ¶¶ 154-68; (3) denial of medical care under 42 U.S.C.

§ 1983, against Smith, Mitchell, Gabriel, Solopow, Sablan, Kiss, Herrera, Teves, Jackson,

Santiago, Gemmell, Lorier, Galindo, Rocker, Magat, Stevenson, Yune, Aboujaoude, Pontejos-

Murphy, McQuade, and Does 1-10, *id.* ¶¶ 169-200; (4) supervisor liability under § 1983, against

Gemmell, Magat, and the Supervisor Does, SAC ¶¶ 201-14; (5) municipal liability – failure to

train under § 1983, against the County of Alameda, *id.* ¶¶ 215-25; (6) municipal liability –

unconstitutional custom, practice, policy under § 1983, against the County, *id.* ¶¶ 226-39;

(7) failure to provide reasonable accommodations under the Americans with Disabilities Act

("ADA"), against the County, *id.* ¶¶ 241-64; (8) state law negligence, against Smith, Mitchell,

Gabriel, Solopow, Sablan, Kiss, Herrera, Teves, Jackson, Santiago, Gemmell, Lorier, Galindo,

Rocker, Magat, Stevenson, Yune, Aboujaoude, Pontejos-Murphy, McQuade, Does 1-10, the

County, and CFMG, *id.* ¶¶ 265-73; and (9) violation of the Bane Act, Cal. Civ. Code § 52.1,

against all defendants, *id.* ¶¶ 274-82.

The "Individual County Defendants" filed a renewed motion to dismiss ("Mot."), [Dkt.

No. 72], and Requests for Judicial Notice, [Dkt. No. 72-1]. Miles opposed. ("Oppo.") [Dkt. No.

73]. The defendants replied. [Dkt. No. 74]. I issued a tentative order, [Dkt. No. 75], and the

parties informed the court they agreed with the tentative and did not think a hearing would be

necessary. Accordingly, I vacated the hearing scheduled for December 20, 2023. [Dkt. No. 76].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

United States District Court
Northern District of California

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

## I.   WRONGFUL DEATH CLAIMS

First, the defendants argue that Miles improperly reasserts claims for wrongful death under 42 U.S.C. § 1983, which I previously dismissed with prejudice. Mot. 4:13-5:7; *see also* Prior Order 8:26-10:4. In opposition, Miles points out that two of the claims that the defendants challenge—causes of action 5 and 6 for theories of municipal liability—are not asserted against these defendants, and so they cannot challenge the claims. Oppo. 8:28-9:2. She is correct and the motion is DENIED for those causes of action.

The defendants also challenge Miles' first cause of action, which is entitled "Interference with Familial Relationship, Due Process—Violation of the Fourteenth Amendment (42 U.S.C. § 1983) (Wrongful Death) (By Plaintiff against Defendants [Smith, Mitchell, Gabriel, Solopow, Sablan, Kiss, Herrera, Teves, Jackson, Santiago, Gemmell, Lorier, Galindo, Rocker, Magat, Stevenson, Yune, Aboujaoude, Pontejos-Murphy, McQuade, and Does 1 through 10])." SAC at 56. The defendants cite my Prior Order and assert that plaintiffs cannot bring wrongful death claims under 42 U.S.C. § 1983 because § 1983 only permits survival actions. *See* Mot. 4:14-5:7.

1    The Prior Order did not address wrongful death standing for the first cause of action.

2           To state a claim under § 1983, a plaintiff must allege, in part, a violation of a right secured

3    by the Constitution or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

4    Constitutional rights generally may not be asserted vicariously on behalf of someone else.  *See*

5    *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov.

6    24, 1998)).  In other words, plaintiffs generally may not bring a § 1983 action on behalf of others,

7    including relatives.  The exception is that where a state statute authorizes survivorship actions,

8    plaintiffs may file lawsuits under § 1983 seeking to vindicate the constitutional rights of a

9    deceased relative.  *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228-29 (9th Cir. 2013) (citing

10   *Moreland*, 159 F.3d at 369).

11          A survivorship action is, by definition, "based upon the decedent's own individual claims

12   that he would have been entitled to file for his own injuries."  *Est. of Lopez ex rel. Lopez v. Torres*,

13   105 F. Supp. 3d 1148, 1159 n.4 (S.D. Cal. 2015) (citing Cal. Code Civ. Proc. § 377.10 et seq.).  In

14   contrast, a wrongful death claim is one brought "brought by a decedent's heirs for damages they

15   personally suffered as a result of the decedent's death."  *Est. of Adomako v. City of Fremont*, No.

16   17-CV-06386-DMR, 2018 WL 587146, at *3 n.2 (N.D. Cal. Jan. 29, 2018) (first citing Cal. Code

17   Civ. Proc. § 377.60; and then citing *Hayes*, 736 F.3d at 1229).  In California, wrongful death is a

18   cause of action under state law.  *See Est. of Lopez*, 105 F. Supp. 3d at 1159 n.4 (citing Cal. Code.

19   Civ. Proc. § 377.10 et seq.).  But outside of the maritime context, *see Davis v. Bender*

20   *Shipbuilding & Repair Co.*, 27 F.3d 426, 428 (9th Cir. 1994), there is no federal cause of action

21   for wrongful death, nor is there apparently a direct constitutional right.

22          Because § 1983 claims require a violation of a constitutional or federal statutory right,

23   *West*, 487 U.S. at 48, a plaintiff cannot bring a specific "wrongful death" claim under § 1983,

24   *Murphy v. Cnty. of Mendocino*, No. 15-CV-04624-NJV, 2016 WL 794458, at *2 (N.D. Cal. Mar.

25   1, 2016) (citing *Est. of Lopez*, 105 F. Supp. 3d at 1159).  Rather, plaintiffs may bring survivorship

26   claims on behalf of a deceased family member whose constitutional rights were allegedly violated.

27   *See, e.g.*, *Hayes*, 736 F.3d at 1128-29 (Fourth Amendment rights); *McGinnis v. Cnty. of Sonoma*,

28   No. 21-CV-09499 SI, 2023 WL 2743578, at *2 (N.D. Cal. Mar. 30, 2023) (constitutional rights

via *Monell* claims).

A plaintiff may also bring a § 1983 action on behalf of *her* rights that were allegedly violated by the death of her family member—for example, for violation of her "liberty interest in the companionship of [her] child." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) (first citing *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008); and then citing *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)); *see also Est. of Adomako*, 2018 WL 587146, at *6 (same). Such a claim may be brought as a substantive due process claim under the parent's Fourteenth Amendment right to familial association. *See Chaudhry*, 751 F.3d at 1106. It is not a survivorship claim. *See Est. of Adomako*, 2018 WL 587146, at *6. And because the claim is for violation of the *parent's* constitutional right, where the parent brings the claim on behalf of her rights, the violation may form the basis for a *Monell* action. *See McGinnis*, 2023 WL 2743578, at *2 (first citing *K.C.A. by and through Purvis v. Cnty. of San Diego*, Case No. 20-CV-2504 W (BLM), 2021 WL 3370790, at *7 (S.D. Cal. Aug. 3, 2021); then citing *Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012); and then citing *Shelley v. Cnty. of San Joaquin*, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014)); *see also Est. of Umana by & through B.U. v. Nat'l City*, No. 22CV1657-GPC(SBC), 2023 WL 5344305, at *8 (S.D. Cal. Aug. 17, 2023) (same).

As addressed in a well-researched and well-reasoned order by the Honorable Gonzalo P. Curiel in the Southern District, there is some confusion within this circuit regarding "wrongful death" claims under § 1983, in part due to certain unpublished memoranda disposition referring to § 1983 claims as "wrongful death" claims. *See Est. of Lopez*, 105 F. Supp. 3d at 1159 (collecting cases). These so-called "wrongful death" claims were allowed to proceed under § 1983, though, because the underlying claim sought to vindicate the constitutional rights of the decedent, not on the theory that they vindicated the plaintiff's constitutional or federal rights regarding wrongful death. *See id.* (collecting cases). In other words, they were survivorship claims. *Cf. Hayes*, 736 F.3d at 1228-29.

Together these cases confirm that a plaintiff may bring a § 1983 claim for violation of her own constitutional rights based on the death of a family member—these are neither survivorship

United States District Court
Northern District of California

8

United States District Court
Northern District of California

nor wrongful death claims. She may also bring a § 1983 claim for violation of the decedent's constitutional rights, if permitted by state statute—these are survivorship claims. In some states, she may also bring a "wrongful death" claim under state law, which vindicates her rights. She may not, however, bring a standalone "wrongful death" claim under § 1983, because there is no standalone "wrongful death" right. To the extent that a plaintiff seeks vindication of *her* constitutional or federal statutory rights arising from the death of a family member, she may bring those directly, but they should not be labeled "wrongful death" claims.

Perhaps because of the confusion in case law addressed by Judge Curiel, here Miles insists in her opposition that her first cause of action is a "wrongful death" claim.[1] *See* Oppo. 9:3-11:6. But while her opposition describes entitlement to "wrongful death damages under the Fourteenth Amendment," the text of the opposition—as well as her SAC—seeks damages for violation of her "constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of" her son. *Id.* (quoting *Curnow*, 952 F.2d at 325). This is exactly what she is allowed to seek under § 1983. *See Curnow*, 952 F.2d at 325; *Chaudhry*, 751 F.3d at 1106. Despite Miles' choice of labels, this is not a "wrongful death" claim. The first cause of action properly seeks vindication of Miles' own constitutional rights and so may be brought under § 1983. The defendants' motion is DENIED for this argument.

Separately, I note that in her opposition, Miles cited significant case law concerning § 1983 actions, wrongful death, and survivorship claims. Because her opposition to the first motion to dismiss did not include any of these citations, nor any other analysis or support for these arguments, [Dkt. No. 29] 7:15-28, her new citations and arguments caused me to reexamine the law, her prior opposition, and her First Amended Complaint. In the first round of motions to dismiss, the defendants argued that Miles could not bring wrongful death actions under § 1983, and in opposition Miles said that her *Monell* claims for municipal liability were "both survival and wrongful death actions" and were based on the constitutional violations asserted in "any one of or

---

[1] The Ninth Circuit has recognized that a state law wrongful death claim can be essentially identical to a § 1983 claim for violation of an individual's Fourteenth Amendment right to familial association. *See Chaudhry*, 751 F.3d at 1106.

1    combination of Claims (1)-(4)." *Id.* Because that was the extent of her argument, and because

2    Miles cited no law, I assumed her *Monell* claims for "wrongful death" were intended as she

3    described them—as standalone claims for wrongful death. My Prior Order dismissed those claims

4    because I found that plaintiffs cannot bring § 1983 claims for wrongful death, and so "wrongful

5    death" cannot be a constitutional basis for a *Monell* claim. *See* Prior Order 9:2-10:4.

6         Upon further review, however, including of additional assertions made in the current

7    opposition brief, it seems that Miles intended her *Monell* claims for "wrongful death" to be based

8    on violations of *her* constitutional right to familial association under the Fourteenth Amendment.

9    *See* Oppo. 10:26-11:5. This was not previously made clear. Plaintiffs may bring *Monell* claims

10   for violations of their constitutional rights to familial association. *See McGinnis*, 2023 WL

11   2743578, at *2 ("[A] decedent's survivor, including a parent, can bring a *Monell* claim based on

12   the parent's Fourteenth Amendment right to familial association; such claims are not survivorship

13   claims." (collecting cases)). To the extent that Miles brings *those* claims—based on violation of

14   her Fourteenth Amendment rights, not based on "wrongful death"—they may proceed. To the

15   extent that my Prior Order overstated that a § 1983 claims can "only be survival actions" and not

16   wrongful death actions, Prior Order 9:13-27, I should have more clearly explained that § 1983

17   claims may also be brought for violations of a *plaintiff's* constitutional rights that arose from the

18   death of the decedent—though these are not called "wrongful death" claims under federal law.

19   That order is hereby AMENDED with this clarification. Miles' *Monell* claims for violation of her

20   Fourteenth Amendment rights may proceed.

21        Accordingly, the defendants' motion is DENIED.

22   **II.    DOE DEFENDANTS**

23        In my Prior Order, I instructed the parties to engage in "an initial phase of discovery

24   narrowly aimed at determining the identities of the individual Doe defendants and other key facts

25   relevant to Miles' claims against the individual Doe defendants." Prior Order 10:23-11:5. They

26   did so, and Miles was able to amend her complaint to name twenty individual defendants. *See*

27   SAC. The SAC, however, still includes claims against ten Does. The defendants move to dismiss

28   those Doe defendants, arguing that Miles had an opportunity to engage in discovery, named the

United States District Court
Northern District of California

1  Does involved in the incident, and now improperly asserts more Doe defendants without tying any

2  facts to the new Does.  Mot. 18-20.  In opposition, Miles argues that the defendants did not

3  provide sufficient discovery and seems to assert violations of FRCP 26 and 33(d).  *See* Oppo.

4  11:8-25.

5       "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Garcia v.*

6  *City of King*, No. 5:16-CV-06712-EJD, 2017 WL 5194519, at *9 (N.D. Cal. Nov. 9, 2017)

7  (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  But "[t]he use of 'Doe'

8  defendants where a defendant's true identity is unknown is common."  *Sullivan v. Storer Transit*

9  *Sys.*, No. 20-CV-00143-JCS, 2020 WL 1531366, at *5 (N.D. Cal. Mar. 31, 2020) (declining to

10  strike "boilerplate" allegations against Doe defendants that did not assert they played a role in

11  plaintiff's injuries).  "[W]here the identity of alleged defendants will not be known prior to the

12  filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify

13  the unknown defendants, unless it is clear that discovery would not uncover the identities, or that

14  the complaint would be dismissed on other grounds."  *Gillespie*, 629 F.2d at 642 (citations

15  omitted); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (same).

16       Miles was given the opportunity for discovery, and she was able to identify many

17  individuals.  *See Gillespie*, 629 F.2d at 642.  Yet despite amending her complaint to assert that

18  Herrera, Teves, and Jackson were the deputies who failed to conduct custodial checks and

19  ultimately failed to rescue West from the attack, she still re-alleges those same facts against

20  Deputy Does, without any other factual bases for the Does.  *See* FAC ¶¶ 71, 129-30.  The same is

21  true of the choice to classify West and put him in a double cell—she names the individual

22  defendants who made that choice, but also still alleges those same facts against Classification

23  Does, without other factual bases for the Does.  *Id.* ¶ 72.  Indeed, aside from one allegation that

24  West "communicated to Defendant Deputy DOES that he did not want to be housed with another

25  person and/or requested not to be housed with another person," *id.* ¶ 81, every other allegation in

26  the SAC against a Doe defendant is conclusory, overbroad, general, or improperly grouped with

27  allegations against other defendants.

28       For example, Miles alleges that the individual defendants as well as the "Classification

United States District Court
Northern District of California

11

Does . . . had access to knowledge of Decedent WEST'S file to assess his relevant classification criteria including his safety and security needs," SAC ¶ 48; *see also id.* ¶¶ 22-24, 28, 32-33 (defining Does), but does not plead facts that any Doe defendant saw or reviewed the file. She asserts that West interacted with the individual defendants, the Deputy Does, the Supervisor Does, and the Medical Does and showed "obvious signs and symptoms of serious mental illness" and all those defendants "knew of his symptoms, mental illness, and need for care," *id.* ¶ 68, but she does not plead facts that the Doe defendants ever saw West. She asserts that the individual medical defendants "and Medical DOES had a responsibility to continually monitor, evaluate, and treat" West, *id.* ¶ 83, but she does not explain further. The rest of the SAC has many similar, broadly pleaded, and grouped allegations. *See, e.g., id.* ¶¶ 84, 95-97, 144, 147, 151, etc. These general, grouped allegations fail to provide the defendants or me notice of what Miles thinks was done by whom, and they do not contain enough facts to state a facially plausibly claim against any Doe defendant. *See Twombly*, 550 U.S. at 570.

Given the discovery period, Miles should have been able to assert factual allegations against any defendants that were involved in her and West's injuries, even if she cannot yet determine their identities. Because she does not include such factual allegations, she fails to state a claim against any Doe defendants. She does not argue otherwise. *See* Oppo. 11:7-25.[2] And because the complaint "would be dismissed on other grounds"—failure to state a claim—Miles need not be given a second opportunity for preliminary discovery into the Does' identities. *See Gillespie*, 629 F.2d at 642. The claims are DISMISSED without prejudice. Miles may move to amend her complaint later if she can show good cause under Rule 15, such as the discovery of facts showing the involvement of additional individuals.

## III.    42 U.S.C. § 1983 CLAIMS

Miles brings claims for several constitutional violations under 42 U.S.C. § 1983. I address

---

[2] This case differs from *Sullivan*, where the district court did not strike "boilerplate" allegations against Doe defendants because there were no assertions that any Does caused any injuries, so the allegations made no difference to the case. *Sullivan*, 2020 WL 1531366, at *5. Here, the boilerplate Doe allegations generally assert that the Doe defendants contributed to the injuries— but they fail to identify the relevant facts, individuals, and actions.

1    the defendants' arguments for dismissal as they were presented.

2        **A.    "Team Liability" and Failure to Protect Under the Eighth Amendment**

3            The defendants spend a significant portion of their motion arguing that all claims against

4    all moving defendants should be dismissed because, in their view, the SAC makes only general or

5    group allegations rather than alleging anything specific about any individual defendant.  *See* Mot.

6    6:12-10:24.  Though I take the defendants' point that many of Miles' allegations are generally

7    pleaded and do not allege specific actions of specific individuals—as I discuss throughout this

8    Order—the defendants' argument suffers from the same fault of overgeneralization.  By asserting

9    that Miles failed to sufficiently plead any claim as to any individual defendant because the SAC

10   contains only conclusory or sweeping allegations, the defendants too fail to argue that any specific

11   claim is insufficiently pleaded as to any specific defendant.  None of their cited case law[3] stands

12   for the proposition that a court may find that a plaintiff failed to state multiple causes of action

13   without actually analyzing each cause of action.[4]

---

[3] The defendants cite many cases affirming than an individual may only be held liable—at a dispositive stage in litigation—based on that individual's own conduct.  *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  In *Chuman*, 76 F.3d at 294-95, the Ninth Circuit reversed and remanded the case where the district court instructed the jury that "all members of [a] 'team' may be held liable" if a constitutional violation resulted from a "team effort," regardless of "whose actions ultimately inflicted the plaintiff's injury"; the court reasoned that instruction risked assigning liability to a defendant who "had no role in the conduct."  *See also Jones v. Williams*, 297 F.3d 930, 934-38 (9th Cir. 2002) (similarly discussing jury instructions in § 1983 cases).  Also at a late stage in litigation, the Ninth Circuit in *Taylor*, 880 F.2d at 1045-46, affirmed summary judgment for the defendant where the only "evidence" consisted of affidavits without facts establishing the defendant's personal involvement in the allegedly unconstitutional actions.  *See also Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (similarly discussing necessity of establishing factual connection at summary judgment in § 1983 cases).  These cases confirm that a § 1983 plaintiff must *prove* individual involvement of a defendant to hold them liable, but none say anything about the sufficiency of pleadings.

Finally in *Elkins v. Novato Police Department*, No. 21-CV-07377-SI, 2022 WL 3109567, at *5 (N.D. Cal. Aug. 4, 2022), the court granted a police sergeant's motion to dismiss an unlawful search and seizure claim under § 1983 because the complaint contained *no* allegations that the sergeant participated in the underlying allegedly unconstitutional actions.  Though this case stands for the proposition that there must be facts in a complaint tying each defendant to the underlying misconduct, it is not directly on point here.  As the present defendants concede, there are plenty of allegations in the complaint that tie all the defendants to the underlying misconduct.  Here the defendants instead take issue with the fact that some of those allegations are broad and conclusory and seem to try to assign liability to *all* defendants while only some participated in any particular action.  *Elkins* does not offer directly applicable guidance.

[4] A court may, of course, dismiss multiple causes of action at once for reasons such as jurisdiction.

United States District Court
Northern District of California

As best I can tell, the section of the defendants' brief discussing "team liability" identifies only one cause of action that the defendants' say was insufficiently pleaded as to any defendant due to conclusory or broad allegations: the second, for failure to protect under the Eighth Amendment.  *See* Mot. 7:8-8:9; 10:10-24.  Miles asserts this cause of action against all the individual defendants.  *See* FAC at 58.

"The Eighth Amendment requires prison officials to protect inmates from violence."  *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  A prison official's failure to protect inmates from attacks by other inmates violates the Eighth Amendment only where two requirements are met: (1) an objective component, requiring a prisoner to show that that "conditions pos[e] a substantial risk of serious harm"; and (2) a subjective component, requiring a prisoner to show that the defendant was aware of the risk and disregarded it.  *Id.* (citations omitted).  Specifically, a prison official violates an inmate's Eighth Amendment rights only if that official is "deliberately indifferent"—meaning "the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably."  *Wilk*, 956 F.3d at 1147 (citation omitted).  A factfinder may infer subjective awareness from circumstantial evidence.  *Farmer*, 511 U.S. at 842.

The Prior Order found that Miles sufficiently stated a claim for failure to protect against the Doe Classification defendants:

> Miles has pleaded facts showing that the Classification defendants knew that: West suffered from serious mental health illnesses, including schizophrenia, bipolar disorder, and depression, which had led him to be placed in a special mental health housing unit, *see* FAC ¶¶ 16, 18, 22; West had exhibited signs of "serious mental illness" and "bizarre behavior," *id.* ¶ 23; West had been involved in several fights with previous cellmates, *id.* ¶ 28; Cochran suffered from "serious mental illness" and had a "violent criminal history stemming back at least ten years," *id.* ¶¶ 37–38; West had requested to be housed in a single cell, *id.* ¶ 34; custodial staff had recommended that West be placed in a single cell, *id.*, and there was space for West to be housed in a single cell.  *Id.* ¶ 32.  The Classification defendants nonetheless "ignored and overruled the recommendation" and placed West and Cochran in a

---

But that is not the arguments that the defendants make here.

double-cell together. *Id.* ¶¶ 36, 38.  Within hours of being housed together, Cochran strangled, beat, and killed West. *Id.* ¶ 39.  At this early stage, and drawing all reasonable inferences in Miles' favor, these allegations suffice to demonstrate that the Classification defendants knew of facts supporting an inference and drew the inference of a substantial risk to West if he continued to be double celled with other inmates.

Prior Order 13:1-15:19.  Now Miles has repleaded these same and additional allegations and pleads them as to specific Doe defendants.  The defendants argue that these allegations are still pleaded too generally and fail to identify specific individual involvement.  I agree for some individual defendants and disagree for others.

Miles clearly pleads the objective requirement of the Eighth Amendment test: that housing West with any other cellmate "pos[ed] a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  She alleges many facts about West's mental health issues and explains how his mental health caused him to verbally provoke and disturb others, which led to them physically harming West. *See, e.g.*, SAC ¶¶ 68, 72, 76-77.  She points to no fewer than *five* incidents in a six-week period where West was physically attacked by a cellmate allegedly due to West's mental condition. *See id.* ¶¶ 59, 61, 63, 65, 67.  As discussed in the Prior Order, she does not allege that West started any of these fights.  Miles also points to at least one jail official specifically noting that West should be kept separate from other prisoners. *See id.* ¶ 61.  Together, this is more than enough to allege that housing West anywhere but a single cell—regardless of who the cellmate might be—posed a substantial risk of harm. *See Farmer*, 511 U.S. at 834.

And she pleads that twelve individual defendants were subjectively aware of this specific risk but failed to respond reasonably—that they were deliberately indifferent. *See Wilk*, 956 F.3d at 1147.  She pleads that Smith conducted West's intake and Mitchell conducted West's booking on September 22, 2021.  SAC ¶¶ 7-8, 50.  They had access to West's files during that process, *id.* ¶ 48, and knew that he had previously been attacked in jail and had mental health issues including bipolar disorder, schizophrenia, and depression, *id.* ¶¶ 51-52, 55, but did not act reasonably to ensure that he was housed by himself, *id.* ¶¶ 48, 51-53, 56.  She also asserts that Pontejos-Murphy, McQuade, and Aboujaoude medically evaluated West within the first two days that he arrived at the jail, and each noted that West had severe mental illnesses, *id.* ¶ 49, but also failed to

reasonably ensure he was housed by himself, *id.* ¶¶ 55-57. Two days later, Stevenson also medically evaluated West, and Rocker conducted a behavioral health assessment, *id.* ¶ 50, and those evaluations found that West had "unpredictable behavior," "an altered mental state," "mental and development disability," and other mental health conditions, *id.* ¶ 51, but neither medical professional ensured he was housed in a way that addressed the safety risks associated with his mental health needs, *id.* ¶¶ 51, 55-57. Further, Lorier knew that Cochran was violent, *id.* ¶ 95, and put a "Keep Separate" note on West's record when he learned that other inmates attacked West, *id.* ¶ 61, but did not otherwise ensure West was housed in a single cell for his own safety. And Sablan was told that Cochran attacked another inmate, but Sablan subsequently chose to move Cochran to the mental health housing unit and house him with West rather than keep him separate. *Id.* ¶¶ 87, 89.

Each of these defendants knew that West should be housed separately from other prisoners, including Cochran, for West's safety but failed to ensure that he was, and some individuals even went so far as to ignore recommendations that he should be housed separately. *See id.* ¶¶ 51-54, 60, 62, 64, 66, 82. These mirror the allegations I found sufficient in the Prior Order and for the same reasons are sufficient to plead deliberate indifference. *See Wilk*, 956 F.3d at 1147. Miles states a claim against Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker, Lorier, and Sablan. The motion against these defendants is DENIED.

Miles also states a claim against Herrera, Teves, and Jackson for failure to protect West from Cochran during and after the fight. She asserts that these defendants were responsible for protecting West in his housing unit, *id.* ¶¶ 13-15, 98; that they knew Cochran was violent, *id.* ¶ 97; that they knew prisoners in the mental health unit required checks every 15 to 30 minutes for their safety, *id.* ¶¶ 71, 79; that they failed to perform these checks and later falsified records to cover their tracks, *id.* ¶¶ 71, 102, 129; that the fight lasted over thirty minutes and could be heard throughout the cell block, *id.* ¶¶ 103-07, 110, and so would have been heard if the deputies had conducted required patrols; and that when the deputies finally arrived at the cell, they intentionally failed to intervene and save West, *id.* ¶¶ 117-23. Together this is enough to show that failing to conduct regular checks posed a substantial risk of harm, as did housing West with a cellmate and

1    particularly Cochran, and that these three defendants were aware of these risks and specifically

2    disregarded them, so each was deliberately indifferent.  *See Farmer*, 511 U.S. at 834; *Wilk*, 956

3    F.3d at 1147; *see also infra* Part III.C.2.b & n.7 (rejecting the defendants' arguments that these

4    allegations against Herrera, Teves, and Jackson are conclusory).  The motion against these

5    defendants is DENIED.

6            Miles makes similar allegations about Santiago, including that he was responsible for

7    protecting West in the mental health housing unit.  SAC ¶¶ 16, 98.  But she alleges that Santiago

8    was "surprised" that other defendants assigned a cellmate to West and that Santiago only let West

9    out of the cell alone, without other inmates around him, from which it can be inferred that

10   Santiago was acting reasonably with respect to West's rights.  *Id.* ¶ 99.  Importantly Miles does

11   not allege that Santiago knew Cochran was violent, that he failed to conduct required checks or

12   patrols, or that he failed to intervene in the fight.  Without more, she does not state a claim against

13   Santiago, and it is DISMISSED with leave to amend.

14           Miles also does not state a claim against Gabriel or Solopow because almost all allegations

15   against these individuals are wholly conclusory.  For example, she pleads that "as part of [West's]

16   evaluation, documentation, and classification," Smith, Mitchell, Gabriel, Solopow, Rocker,

17   Aboujaoude, Pontejos-Murphy, McQuade, and Stevenson knew about West's history of being

18   attacked and his mental health situation.  *Id.* ¶ 51.  Though this is plausible as to Smith, Mitchell,

19   Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, and Rocker, given the specific allegations

20   about each person's personal knowledge of and involvement with West, it is not plausible for

21   Gabriel and Solopow, given the lack of similar allegations.  *See also id.* ¶¶ 52-53 (additional

22   conclusory allegations as to Gabriel and Solopow).  And while Miles asserts that Solopow was

23   told about the first attack on West, *id.* ¶ 59, and Gabriel was told about the second and third, *id.*

24   ¶¶ 61, 63, she fails to non-conclusorily assert that either defendant was otherwise involved with

25   West.  The allegations therefore do not assert that these defendants were subjectively aware of and

26   disregarded the risks to West.  *See Farmer*, 511 U.S. at 834.  Miles does not state an Eighth

27   Amendment claim against Gabriel or Solopow, and the claims against them are DISMISSED with

28   leave to amend.

Miles also does not state a claim against Kiss under the Eighth Amendment. Kiss conducted Cochran's intake and classification and put Cochran in a different housing unit from West. SAC ¶ 85. But Miles asserts that Sablan, not Kiss, was responsible for moving Cochran to same housing unit as West, so it is not clear that Kiss played any role in that decision. All other allegations about his involvement with West are conclusory, and Miles does not argue otherwise in opposition. Miles therefore fails to plead that Kiss was subjectively aware of and disregarded any risk to West, *see Farmer*, 511 U.S. at 834, and the claim against him is DISMISSED with leave to amend.

Miles also does not state an Eighth Amendment claim against Gemmell. The only specific allegation about him was that he supervised the deputies in West's housing unit, SAC ¶ 94, which is addressed in the supervisor liability section below, *infra* Part III.D. The other allegations about him are too conclusory or general to state a claim under the Eighth Amendment. Miles therefore does not allege that Gemmell was subjectively aware of and disregarded a risk to West, *see Farmer*, 511 U.S. at 834, and the claim against him is DISMISSED with leave to amend.

Miles also does not state an Eighth Amendment claim against Yune or Galindo. He asserts that Yune medically evaluated Cochran after a fight and cleared him to be in the mental health housing unit, *id.* ¶¶ 27, 89, and he says that Galindo knew about Cochran's violence and failure to comply with deputies' orders, *id.* ¶ 88. But Miles does not say that Yune or Galindo knew anything about West, and she does not otherwise—non-conclusorily—connect these individuals to West. The SAC therefore does not plead that these defendants were subjectively aware of and disregarded a risk to West, *see Farmer*, 511 U.S. at 834, and the claims are DISMISSED with leave to amend.

Finally, Miles does not state an Eighth Amendment claim against Magat. She asserts that Magat was a medical supervisor and failed to adequately evaluate West, SAC ¶ 54, but she does not non-conclusorily or plausibly allege that Magat evaluated West at all, or even that Magat interacted with him or was responsible for evaluating him, *cf. id.* ¶ 55. All other allegations about Magat are nonspecific or too conclusory to state a claim. Together, Miles fails to assert that Magat was subjectively aware of and disregarded a risk to West, *see Farmer*, 511 U.S. at 834, so

1   the claim against her is DISMISSED with leave to amend.

2       Accordingly, the defendants' motion is DENIED as to Smith, Mitchell, Pontejos-Murphy,

3   McQuade, Aboujaoude, Stevenson, Rocker, Lorier, Sablan, Herrera, Teves, and Jackson.  The

4   motion is GRANTED as to Santiago, Gabriel, Solopow, Kiss, Gemmell, Yune, Galindo, and

5   Magat.  Miles has leave for one final opportunity to amend her complaint and assert

6   nonconclusory allegations against these defendants.

7       **B.     Fourteenth Amendment Claim for Substantive Due Process and Right to**

8            **Familial Association**

9       As discussed above, Miles asserts that the individual defendants violated her Fourteenth

10  Amendment substantive due process rights to familial association by failing to properly evaluate

11  West and his various cellmates for suitability for being celled together, provide adequate mental

12  health treatment for West, adequately monitor the cells, protect West, and provide adequate and

13  prompt medical care.  *See, e.g.*, SAC ¶ 147.  I previously found that Miles sufficiently pleaded this

14  claim against the Classification defendants by pleading that their conduct "shock[ed] the

15  conscience."  Prior Order 15:20-16:22.

16      In their motion, the defendants argue that "[b]eyond the Classification Defendants," Miles

17  fails to plead that the conduct of the individual defendants shocks the conscience.  Mot. 12:5-

18  13:10.  Their reply extends the argument to *all* individual defendants, *see* Repl. 6:14-17, though

19  they did not make such a broad argument in their motion[5] and so Miles did not have an

20  opportunity to address it in her opposition.  That said, the argument mirrors the one made for the

21  Eighth Amendment claim, which Miles did address, and for the same reasons it is viable for some

22  defendants and not for others.

23      Parents have "a Fourteenth Amendment liberty interest in the companionship and society

24  of their children."  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citing *Curnow*, 952

25  F.2d at 325).  "Official conduct that 'shocks the conscience' in depriving parents of that interest is

26  cognizable as a violation of due process."  *Id.* (quoting *Porter*, 546 F.3d at, 1137).  "In

27  _____

28  [5] Notably, the section of the defendants' motion that discusses "team liability" does not discuss
    this cause of action.  *See* Mot. 6:12-10:24.

United States District Court
Northern District of California

United States District Court
Northern District of California

determining whether deliberate indifference is sufficient to shock the conscience, or whether the more demanding standard of purpose to harm is required, 'the "critical consideration [is] whether the circumstances are such that actual deliberation is practical."'" *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) (quoting *Porter,* 546 F.3d at 1137); *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077-84 (9th Cir. 2013) (analyzing plaintiff's Eighth Amendment claim against prison officials and discussing whether evidence met "shock the conscience" standard).

Here the defendants do not argue that the "purpose to harm" standard applies, nor could they.  All the allegations and the alleged injuries suggest that the defendants had significant time to address the growing concerns—including many weeks for the Classification and Medical defendants to recognize the housing issues and move West to a single cell, and over an hour for Teves, Jackson, and Herrera to conduct their required patrols and protect West from Cochran's attack.  Accordingly, the deliberate indifference standard applies.  *See Tennison*, 570 F.3d at 1089; *Wilkinson*, 610 F.3d at 554.

And as addressed above, Miles sufficiently alleges that Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker, Lorier, Sablan, Herrera, Teves, and Jackson acted with deliberate indifference, because she alleges that each was subjectively aware of a substantial risk of serious harm to West yet disregarded that risk by failing to respond reasonably.  *Supra* Part III.A; *see also Lemire*, 726 F.3d at 1077-84; *Wilk*, 956 F.3d at 1147.  The motion is therefore DENIED as to those defendants.  She fails to make these allegations as to Santiago, Gabriel, Solopow, Kiss, Gemmell, Yune, Galindo, and Magat, and so the motion is GRANTED as to them.  And because the defendants failed to properly raise this argument in their opening motion, out of fairness to West she has leave to amend her claims to plead, to the extent possible, that these individuals acted with deliberate indifference.

To the extent that the defendants wish to properly raise their argument about the remaining individual defendants in an opening motion, they may do so on the next round of motions to dismiss or in a dispositive motion.  Miles may amend her complaint in anticipation accordingly, to the extent possible.

United States District Court
Northern District of California

### C. Eighth Amendment Claim for Denial of Medical Care

Miles' third cause of action asserts that West's Eighth Amendment rights were violated by the defendants' wrongful denial of medical care.  Her SAC appears to present two theories for this claim: first that certain defendants denied West medical care before the incident with Cochran, SAC ¶¶ 49-84, 92-93, 172-79, 181-99, and second that Herrera, Teves, Jackson, and possibly Santiago denied West medical care during and following Cochran's attack, *id.* ¶¶ 98-123, 128-33, 180.  Miles' opposition, though, only argues that Herrera, Teves, and Jackson denied West medical care after the attack.  Oppo. 20:13-18.  The defendants assert that both theories should be dismissed because West failed to exhaust his administrative remedies and that the allegations are too conclusory to state a claim.  Mot. 13:11-16:13.

#### 1. PLRA

The defendants' argument regarding administrative exhaustion under the Prisoner Litigation Reform Act ("PLRA") is unpersuasive.  I rejected this same argument in my Prior Order, finding in part that it was premature and better suited for summary judgment, *see Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), and permitting the defendants to reassert the argument "on a fuller factual record," Prior Order 20:6-8.  The argument remains premature.  Though the defendants now point to additional facts pleaded in the SAC, their construction of those facts borders on bad faith.  For example, they say the SAC "contains no allegations" that West had a serious physical or mental illness yet acknowledge the Miles pleads that her son experienced "hallucinations, delusions" and other obvious signs of mental illness.  Mot. 14:22-15:3.  They assert that it is "unclear what Plaintiff means" when she says West "did not have time to file a grievance" concerning denial of medical care, Mot. 15:11-12, yet they do not deny that West was killed and so could not have filed a grievance about the lack of medical care as he lay dying.  For these reasons and the same raised in my Prior Order, the motion is DENIED.[6]

---

[6] The request for judicial notice related to this cause of action, [Dkt. No. 72-1], is similarly DENIED without prejudice.  The defendants may raise these documents as evidence later in litigation, when Miles has better access to facts and evidence concerning what West did or could have done to file a grievance.

### 2.     Sufficiency of the Pleadings

With respect to the argument concerning sufficiency of the pleadings, "to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This two-part test requires showing: (1) a "serious medical need," meaning that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"; and (2) "the defendant's response to the need was deliberately indifferent," meaning there was both "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and "harm caused by the indifference."  *Id.* (citation omitted).

#### a.     Medical Care Before Cochran Attack

Given Miles' lack of argument concerning the first theory for denial of medical care, it is not clear if she intends to bring the argument.  Generously reading her SAC, it seems possible that she intended to plead that West's mental health condition created a medical requirement for him to be housed in a single cell, and so the defendants denied West adequate medical care *before* Cochran's attack by failing to provide single cell housing.  *See, e.g.*, SAC ¶ 55-56, 69, 71-72, 79, 102, 130.  But it is not clear that she makes this argument, particularly because she does not address it in her opposition.  For those reasons, and because the individual defendants are immunized under California Government Code section 845.6, *infra* Part IV.A.6, the claim for failure to provide medical care before the attack is DISMISSED.  Miles has leave to amend to clearly plead the claim, to the extent possible.

#### b.     Medical Care During and After Cochran Attack

With respect to the second theory for denial of medical care, Miles' claim was previously dismissed because she failed to plead sufficient facts, including "the extent of the delay, the circumstances surrounding the delay, or what the [defendants] could reasonably have done in the interim given the alleged extent of West's injuries."  Prior Order 21:8-22:14.  She has now added additional, sufficient, plausible allegations to state a claim for denial of medical care.

First, Miles sufficiently and plausibly alleges that West had a serious medical need during

and after the attack. *Jett*, 439 F.3d at 1096. She describes West's alleged injuries in detail, *see* SAC ¶¶ 112-16, and says that the attack lasted at least thirty minutes, *id.* ¶ 107. Together this plausibly alleges that West had serious medical needs starting during the attack and lasting until Cochran stopped his assault. The first part of the denial of medical care claim test is met. *See Jett*, 439 F.3d at 1096.

Second, Miles sufficiently and plausibly alleges that the defendants' response to West's medical needs was deliberately indifferent. *See id.* Specifically, she alleges that Herrera, Teves, and Jackson denied West access to adequate medical care during and after the attack by plausibly asserting these defendants knew West required frequent (15 to 30 minute) checks, SAC ¶¶ 71, 102; that they failed to perform those checks and instead falsified records about their performance, *id.* ¶¶ 102, 129; that the fight lasted over thirty minutes and could be heard throughout the cell block, *id.* ¶¶ 103-07, 110, and so would have been heard if the deputies had conducted required patrols; and that when the deputies finally arrived at the cell, they intentionally failed to intervene and provide needed medical assistance for a non-insignificant period of time, *id.* ¶¶ 117-23. She also plausibly alleges a motive for this neglect and delay—she asserts that West's mental health conditions caused him to "trash-talk," "insult," and "belittle" the deputies, and so they viewed him as less worthy of protection and intentionally failed to monitor him or provide prompt assistance during or after the attack. *Id.* ¶¶ 92, 106, 120. And she alleges what the defendants could have done differently—they could have conducted the required checks, arrived at the cell more quickly, ordered Cochran to stop, entered the cell to pull Cochran off or use force to make him stop, or otherwise intervened before West was choked to death. *Id.* ¶¶ 117-24. These allegations are clearly more substantial and sufficient than those in *Estate of Nelson v. County of Alameda*, No. 21-CV-03225-CRB, 2021 WL 4804299, at *1-2, 5 (N.D. Cal. Oct. 14, 2021). There, the plaintiff alleged merely that the deputies "delayed their request to paramedics" and "failed to provide any care" to the decedent after an attack but did not allege anything similar about the deputies' responsibilities, their motive, or any circumstances surrounding the denial of care. *Id.* This case is no longer on point.

Accordingly, the allegations are sufficient to show that these three defendants acted

23

purposefully or failed purposefully to respond to West's medical needs, and that West and Miles suffered harm as a result. *See Jett*, 439 F.3d at 1096. Though the defendants contest the veracity of the allegations,[7] *see* Mot. 11:1-12:4; Repl. 5:6-6:7, and assert that these allegations are conclusory and nonspecific, *id.* 15:21-16:12, their arguments are unavailing. These facts are sufficiently detailed for this stage of litigation, before extensive discovery has been conducted, witnesses have been interviewed, and body camera or surveillance camera footage have been provided. And, Miles' theory is plausible, though the defendants may later present evidence contesting the truth. The motion is DENIED for the claim against Herrera, Teves, and Jackson— the only defendants for which Miles provides specific and relevant factual allegations regarding after the Cochran attack. The medical care claims against the other defendants are DISMISSED.

### D. Sufficiency of Supervisor Liability Claims

Miles alleges that Gemmell, Lorier, Galindo, Rocker, Magat, Aboujaoude, Pontejos-Murphy, and McQuade were all supervisors, SAC ¶¶ 17-20, 25, 29-31, though she asserts her Supervisor Liability cause of action against only Gemmell, Magat, and the Supervisor Does, *id.* at p.71. The defendants argue that the claims against Gemmell and the Supervisor Does should be dismissed for failure to state a claim but do not challenge the claim against Magat. Mot. 16:14-18:18; Repl. 10:16-11:18. The claims against the Supervisor Does are DISMISSED for the reasons discussed above, *supra* Part II.

A supervisory official is liable under section 1983 if (1) the official is personally involved in the constitutional deprivation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) 4 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew

---

[7] The defendants frame their objections as contesting the conclusory nature of the allegations, but their papers show that their objections concern the truthfulness of the allegations. *See, e.g.*, Mot. 11:18-19 (asserting it is "nonsensical" that the deputies would stand outside the cell without intervening), 11:20-21 (arguing that Cochran could not have restrained and strangled West simultaneously), 11:21-12:1 (noting the complaint does not state the time it took the defendants to summon medical care); Repl. 5:6-6:7 (repeating same arguments).

United States District Court
Northern District of California

or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

"Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983." *Sullivan v. Biter*, No. 15-cv-00243, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) (first citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); and then citing *Starr*, 652 F.3d at 1207). In other words, to state a claim against any individual defendant based on supervisory liability, Miles "must allege *facts* showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it." *Richard v. Holtrop*, No. 15-cv-5632, 2016 WL 11520620, at *5 (C.D. Cal. May 12, 2016) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). In Richard, for instance, the allegations that a supervisor "failed to make any attempt" to stop a subordinate from "behaving inappropriately and knowingly allowed it to continue" were too conclusory to state a claim for supervisorial liability. *Richard*, 2016 WL 11520620, at *4-5.

As in her prior complaint, *see* Prior Order 22:15-23:23, Miles fails to allege facts demonstrating that Gemmell was either personally involved in or causally connected to the constitutional deprivations that West experienced. The defendants correctly point out that all allegations about Gemmell are conclusory or too broadly grouped with allegations made about the actions of several other defendants. *See, e.g.*, SAC ¶ 48 ("As part of Decedent WEST'S intake and classification process by Defendants SMITH, MITCHELL, GABRIEL, SOLOPOW, Classification DOES, ROCKER, ABOUJAOUDE, PONTEJOS-MURPHY, MCQUADE, STEVENSON and Medical DOES, said Defendants along with Defendants SABLAN, KISS,

HERRERA, TEVES, JACKSON, SANTIAGO, GEMMELL, LORIER, GALINDO, MAGAT, and YUNE had access to knowledge of Decedent WEST'S file to assess his relevant classification criteria including his safety and security need."), ¶ 55 (asserting "SMITH, MITCHELL, GABRIEL, SOLOPOW, ROCKER, ABOUJAOUDE, PONTEJOSMURPHY, MCQUADE, and STEVENSON and Supervisors GEMMELL, LORIER, GALINDO, and MAGAT had interviewed and medically evaluated Decedent WEST" by September 22, 2021, the first day he arrived at the jail, without ever asserting that Gemmell participated in or supervised the intake or classification, saw or reviewed his file, or even knew West was at the jail), ¶ 68 (asserting that West "displayed obvious signs and symptoms of serious mental illness" "during [his] interactions with" the individual defendants, without ever asserting that Gemmell interacted with West), etc.  These are too conclusory and broad and lack sufficient facts to plead a claim for supervisor liability against Gemmell.  The defendants' motion is GRANTED and the claim against Gemmell is dismissed, with leave to amend to clearly allege what Gemmell did, what his responsibilities were, and how he was liable for any of West's or Miles' injuries.

## IV.     STATE LAW CLAIMS

Finally, the defendants challenge the two state law claims brought by Miles, for negligence and for violation of California's Bane Act, arguing that the individual defendants are all immune and that Miles fails to state a claim.  Mot. 20:10-22:2.  Miles' state law negligence claim against the individual defendants is grounded in the defendants' alleged failure to properly classify West and provide appropriate housing, failure to protect West, failure to perform proper and timely cell checks, failure to immediately summon medical care, failure to train, and failure to follow County policy.  SAC ¶¶ 266-67.  Her Bane Act claim is grounded in the defendants' alleged failure to protect West, failure to provide medical care, and failure to screen and classify West and Cochran properly.  *Id.* ¶ 277.

### A.     Immunity

The defendants argue that they are immune for claims related to failure to provide medical care under California Government Code sections 855.8, 856(a)(2); for claims related to failure to adequately examine West's physical or mental conditions under section 855.6; for claims related

26

1    to classifying and housing West and Cochran under section 820.2; and for claims relating to

2    failure to provide greater policing protective services under sections 845, 845.6.  Mot. 20:8-21:16.

3    They also argue that the exception to immunity under section 845.6 for failure to summon

4    immediate medical care could only possibly apply to Teves, Jackson, and Herrera.  *Id.* 21:17-22:2.

5           Miles' opposition is difficult to follow.  She seems to try to counter each statutory section

6    cited by the defendants but mostly fails to explain any of her arguments.  As a result, here I

7    analyze each of the statutes cited by the defendants to determine whether any seems to apply to

8    Miles' claims.  They do not.  To aid the defendants and the court, however, Miles should be sure

9    to clearly state her arguments and rationale in any amended complaint or renewed briefing.

10          **1.      Section 855.6**

11          First, it seems that California Government Code section 855.6 does not apply here.[8]  It

12   provides:

> Except for an examination or diagnosis for the purpose of treatment, neither a
> public entity nor a public employee acting within the scope of his employment is
> liable for injury caused by the failure to make a physical or mental examination, or
> to make an adequate physical or mental examination, of any person for the purpose
> of determining whether such person has a disease or physical or mental condition
> that would constitute a hazard to the health or safety of himself or others.

17   Cal. Gov't Code § 855.6.  Here, though, it seems that all relevant physical and mental evaluations

18   of West were made "for the purpose of treatment."  *See, e.g.*, SAC ¶ 39 (alleging that whenever an

19   incarcerated person shows signs of serious mental illness, jail policy requires evaluation *and*

20   *treatment*).  These are specifically exempted from section 855.6.  *Cf. Colome v. State Athletic*

21   *Com.*, 47 Cal. App. 4th 1444, 1458 (1996) (finding that examination of boxer was not "for the

22   purpose of treatment" where it was conducted to determine his fitness for a boxing license).  To

23   the extent that the defendants believe section 855.6 should preclude liability for failure to examine

24   West's mental or physical condition, they do not explain why such examinations would not be

25   "for the purpose of treatment."  The motion, and immunity, is DENIED on this basis.

26

27   _____

28   [8] Miles asserts that 855.6 does not apply because she is not arguing that the defendants failed to
     adequately examine West, but her two state law causes of action could certainly be interpreted to
     make these arguments.

United States District Court
Northern District of California

### 2. Section 855.8

It is also not clear that section 855.8 applies here or immunizes the defendants. This section reads in relevant part:

> (a) Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction.
> (b) A public employee acting within the scope of his employment is not liable for administering with due care the treatment prescribed for mental illness or addiction.

Cal. Gov't Code § 855.8. Miles does not appear to assert that her injuries or West's injuries stemmed from diagnosing or failing to diagnose West with mental illness—indeed she repeatedly reasserts that he *was* diagnosed with bipolar disorder and schizophrenia, SAC ¶¶ 49, 51, 55—and does not seem to assert that anyone failed to prescribe him treatment. *See* Cal. Gov't Code § 855.8(a). She also does not seem to make assertions about administering treatment for his mental illnesses, *id.* § 855.8(b), though as discussed above, *supra* Part III.C.2.a, it is possible that her housing argument could be framed this way. But the defendants do not make this argument, nor do they otherwise explain why this statute applies or even discuss it in their reply brief. Accordingly, the motion is DENIED as to this argument.

### 3. Section 856

Next, it is not clear that section 856 exempts the defendants from liability, even assuming without finding that this statutory section regarding confinement for mental illness applies to West's confinement in the mental health housing unit of the jail. It provides that public entities and employees acting within the scope of their employment are not liable for injury resulting from "[t]he terms and conditions of confinement for mental illness," Cal. Gov't Code § 856(a)(2), but is immediately followed by a carveout that reads:

> (c) Nothing in this section exonerates a public employee from liability for injury proximately *caused by his negligent or wrongful act or omission* in carrying out or failing to carry out:
> (1) A determination to confine or not to confine a person for mental illness or addiction.
> (2) The terms or conditions of confinement of a person for mental illness or addiction.

*Id.* § 856(c)(1)-(2) (emphasis added). This carveout appears to plainly apply to Miles' negligence

28

claim, which asserts in part that the defendants were negligent in their repeated decisions to confine Miles to a double cell with a cellmate in the mental health housing unit.  The defendants do not argue that this carveout does not apply, nor do they address the carveout at all or even discuss this statute in their reply brief.  Accordingly, the motion is DENIED as to this argument.

### 4.   Section 820.2

The defendants also assert that they are not liable for decisions regarding Miles' and Cochran's classification and housing because these were discretionary decisions immunized by California Government Code section 820.2.  That statute provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

*Id.*[9]

Miles appears to make two counterarguments, neither of which is persuasive.  First she says that this immunity does not apply because of a different section of the California Government Code, section 820.8, but it discusses liability for "Acts or omissions of others," which is not clearly an issue here.  Second, she says section 820.2 immunity does not apply because of section 844.6(d).[10]  But section 844.6(d) simply says that the immunity afforded to public entities in section 844.6 does not apply to public employees; it does not say that the immunity in 820.2 does not apply in these situations.

With respect to immunizing defendants under section 820.2 for discretionary acts, "[a] discretionary act requires a conscious balancing of risks and advantages when making basic policy decisions; it does not protect operational or ministerial decisions that implement policies."  *Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1020 (N.D. Cal. 2017), *aff'd*, 919 F.3d

---

[9] The defendants say that *Manzo v. County of Riverside*, No. EDCV-17-01165-JGB-SPX, 2017 WL 10544292, at *11 (C.D. Cal. Oct. 19, 2017), supports their argument that decisions regarding the housing of people in jail are discretionary decisions under section 820.2.  But that case only discussed section 820.2 in the context of determining whether the jail staff failed to provide sufficient staff, *id.*, which is not an allegation here and so the case is not clearly applicable.

[10] The defendants also appear to argue in reply (though not in their motion) that section 844.6 renders them immune from liability.  *See* Repl. 13:19.  It is not clear whether they intended to make this argument, but because it seems the statute does not apply, I am not persuaded.

1154 (9th Cir. 2019) (internal citations omitted) (quoting *Trujillo v. City of Ontario*, 428 F. Supp.

2d 1094, 1123 (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518

(9th Cir. 2008)); *see also Muniz v. Pfeiffer*, No. 1:19-CV-0233-LJO-JLT, 2019 WL 4596649, at

*14 (E.D. Cal. Sept. 23, 2019) (same).  "A ministerial act is an act pursuant to an order, or an act

where a person had no choice."  *Steinle*, 230 F. Supp. 3d at 1020 (quoting *Trujillo*, 428 F. Supp.

2d at 1123).  "An operational act is one in which the person who made the decision, implemented

the decision."  *Id.* (quoting *Trujillo*, 428 F. Supp. 2d at 1123).

The defendants do not explain why the housing assignments were discretionary decisions

akin to basic policy decisions, and at least as alleged, I conclude that they were not.  In the only

case I could find that is directly on point, the district court affirmed the magistrate judge's finding

that reached the same conclusion as mine: the jail employee's "decision to house Decedent and

[the cellmate who killed him] together 'was a ministerial determination that is not entitled to

immunity under Section 820.2.'"  *Cotta v. Cnty. of Kings*, 79 F. Supp. 3d 1148, 1182 (E.D. Cal.

2015), *aff'd in part, rev'd on other grounds in part*, 686 F. App'x 467 (9th Cir. 2017).  I am

persuaded by that finding.  Here, too, it seems plausible that the relevant decisions were

operational and ministerial, carried out by various prison officials to implement the basic policy of

housing people in proper cells.  *See Steinle*, 230 F. Supp. 3d at 1020.  Rather than addressing this

case law, the defendants point to cases with different facts written over forty years ago, with little

explanation; I do not find them persuasive.  *See* Mot. 21:9:16.  The motion is DENIED on this

basis.

### 5.     Section 845

Next, the defendants argue that section 845 provides immunity to "claims that peace

officers should have provided a greater level of police protective services."  Mot. 20:23-21:2.  The

defendants do not explain why they believe Miles' negligence or Bane Act claims fall into this

category.  As discussed, her negligence claims are grounded in the alleged failure to properly

classify West and provide appropriate housing, failure to protect West, failure to perform proper

and timely cell checks, failure to immediately summon medical care, failure to train, and failure to

following County policy; and her Bane Act claim is grounded in the defendants' alleged failure to

protect West, failure to provide medical care, and failure to screen and classify West and Cochran properly.  *Id.* ¶¶ 266-67, 277.  Except possibly for the failure to protect allegations, none of these seem to assert that the defendants "should have provided a greater level of police protective services."  The defendants do not explain otherwise.

And even if the allegations can be so categorized, the defendants do not show that this immunity applies.  Section 845 provides: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."  Cal. Gov't Code § 845.  "California courts have indicated that this immunity provision 'was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation.'"  *Mackie v. Cnty. of Santa Cruz*, 444 F. Supp. 3d 1094, 1118 (N.D. Cal. 2020) (quoting *Mann v. State of Cal.*, 70 Cal. App. 3d 773, 778 (1977)).  "By contrast, 'section 845 was not intended to provide immunity against a particular police officer's negligence in the performance of his duty in a particular situation.'"  *Id.* (quoting *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 1402 (1993)).

Here, as in *Mackie*, Miles' negligence claim presents concerns about the individual defendants' negligence in the performance of their duties, not political decisions about the scope of police protection provided to citizens.  *See id.*  The defendants argue that the SAC addresses the political and policy decisions of various defendants, especially Gemmell, but this argument stands in sharp contrast to their assertion (with which I agreed, *supra* Part III.D), that there are no specific allegations as to Gemmell's actions in the SAC.  Accordingly, Section 845 does not provide immunity, as pleaded and argued.  The motion is DENIED as to this argument.

### 6.     Section 845.6

I agree with the defendants that some of them are immune to a subset of the state law claims under section 845.6.  That section provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know

that the prisoner is in need of immediate medical care and he fails to take
reasonable action to summon such medical care.

Cal. Gov't Code § 845.6.  To the extent that Miles argues that the defendants are liable in negligence or under the Bane Act for injuries arising from failure to provide medical care, including mental health care, to West before the Cochran attack, this statutory section bars those claims.  They are DISMISSED.

However, as the defendants correctly point out, the claims against Teves, Jackson, and Herrera for negligence and violation of the Bane Act for failure to timely summon medical care after the Cochran fight are clearly excepted from the immunity bar by the plain language of this statute.  The motion is DENIED as to those claims for this argument.

### 7.    Section 820.8

Finally, the defendants argue—in a single sentence with no citations or explanations—that the Supervisor Defendants are immune from liability for the negligence claim under section 820.8. Mot. 22:5-7.  That section provides: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person.  Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."  Cal. Gov't Code § 820.8.

Miles does not address this argument in opposition.  To the extent that her negligence claim includes allegations against supervisors, *see* FAC ¶ 266 ("Supervisory Defendants had an obligation, duty, or responsibility to train and supervise subordinates."), I do not read it as seeking to hold accountable any individual "for an injury caused by the act or omission of another person." *See also Wolfsen v. Wheeler*, 130 Cal. App. 475, 482, 19 P.2d 1004, 1007-08 (1933) (holding that public officers are individually liable for the acts of subordinates where they participated in, directed, or cooperated in the negligence).  Rather, it is clear from the pleadings that Miles seeks to hold them accountable for the "direct and proximate result[s]" of their actions, including failure to train.  SAC ¶ 268; *see also Wolfsen*, 19 P.2d at 1008 ("[P]ublic officers are liable personally to third persons who are injured by their personal neglect.").  This is specifically permitted under section 820.8.  The defendants do not contest this in their briefs.  The motion is DENIED on this basis.

*     *     *

For those reasons, the defendants' arguments are mostly DENIED as to immunity.  They are granted only regarding immunity for claims arising out of failure to provide medical care before the Cochran attack, under section 845.6.  Because the defendants are largely subject to liability for the state law claims, I turn to their arguments concerning the sufficiency of the pleadings.

### B.       Sufficiency of the Pleadings

#### 1.       Negligence

The defendants argue that Miles fails to state a claim for negligence under California law, focusing mostly on the elements of duty and foreseeability.  Mo. 22:3-24:16.  Miles' opposition is again hard to follow but seems to assert that she sufficiently pleaded each element.  *See* Oppo. 23:8-24:10.

"To prevail in a negligence action, a plaintiff must show that the defendant owed a legal duty, the defendant breached that duty and the breach proximately caused injury to the plaintiff." *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 396 (2009) (citations omitted).  California "imposes a heightened duty of care on jailers, due to prisoners' increased vulnerability while incarcerated."  *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016) (citations omitted).  This special relationship between a jailer and a prisoner gives rise to a duty of care to protect the prisoner from foreseeable harm inflicted by a third party.  *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 246 (2008); *Matysik v. Cnty. of Santa Clara*, No. 16-cv-06223-LHK, 2018 WL 732724, at *8 (N.D. Cal. Feb. 6, 2018) ("The special-relationship exception applies when a state takes a person into its custody and holds him there against his will." (internal quotation marks and citations omitted)).  "Prison officials therefore owe a duty of reasonable care to protect prisoners and detainees from foreseeable harm."  *Weaver v. City & Cnty. of San Francisco*, No. 14-cv03654-LB, 2016 WL 913372, at *11 (N.D. Cal. Mar. 10, 2016) (citation omitted).

I begin with two preliminary notes.  First, the defendants' argument about negligent infliction of emotional distress, Mot. 22:9-13, is not clearly relevant because Miles' negligence claim does not discuss emotional distress.  Second, the defendants assert—in passing, in the first

1    sentence of this section with no additional explanation—that California Government Code section

2    815(a) "preclude[s]" this cause of action.  They are wrong.  Section 815(a) applies to public

3    entities, but the moving defendants are all individuals.  For that reason, their citation to *Walker v.*

4    *County of Santa Clara*, No. C 04-02211 RMW, 2005 WL 2437037, *9 (N.D. Cal. Sept. 30, 2005),

5    which discusses liability for public entities under section 815, is unpersuasive.

6            Next the defendants argue that Miles' negligence claim "is predicated upon an alleged

7    failure to protect" but that she fails to plead a special relationship or foreseeability.  Mot. 22:14-

8    23:7.  I previously addressed and rejected this argument concerning the Classification defendants

9    based on the allegations for the Eighth Amendment claims.  Prior Order 36:4-37:5.  But I found

10   that Miles had to amend her complaint to assert that individual Doe defendants breached their duty

11   of care by pleading that they each would have understood that the harm arising from housing West

12   with Cochran was foreseeable.  *Id.*

13           The operative complaint sufficiently alleges that each individual defendant was a member

14   of the correctional staff, SAC ¶¶ 7-20, 25-27, 29-31, and so owed West a duty of care to protect

15   him from foreseeable harm.  *Giraldo*, 168 Cal. App. 4th at 246.

16           The SAC also sufficiently alleges that the harm arising from housing West with Cochran

17   was foreseeable to Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker,

18   Lorier, Sablan, Herrera, Teves, and Jackson, who each acted with deliberate indifference to the

19   known harm that would likely arise from housing West with *any* cellmate, including Cochran

20   specifically.  *Supra* Parts III.A, B.  In arguing that Miles must allege facts showing Cochran made

21   specific threats against West, Mot. 22:26-23:3, the defendants wholly misunderstand Miles'

22   claims.  Her argument is that the attack was foreseeable because an attack on West by *any*

23   cellmate was foreseeable.  Indeed, in the weeks leading up to West's death he was attacked by

24   *every* cellmate assigned to him.  *See* SAC ¶¶ 59, 61, 63, 65, 67, 72, 74-77.  She also asserts that he

25   had been attacked by cellmates four times during a previous incarceration at the same jail.  *See id.*

26   ¶¶ 9-11, 52.  Given those defendants' knowledge of this pattern of attacks, it was plausibly

27   foreseeable to them that housing West with Cochran would also lead to his attack and serious

28   injury.  *See Weaver*, 2016 WL 913372, at *11.

And this finding is supported by the defendants' own case citations.  In *Megeff v. Doland*, the court of appeal held that "when the avoidance of foreseeable harm requires one to control the conduct of a third person," "[t]he custodian must have knowledge of a specific risk to an identifiable and foreseeable victim."  123 Cal. App. 3d 251, 257 (1981) (citations omitted); *see also Hooks v. S. Cal. Permanente Med. Grp.*, 107 Cal. App. 3d 435, 444 (1980) ("[O]ne must know that the target of the risk is an identifiable and foreseeable victim.").  Miles alleges that these defendants knew of the specific risk that having *any* cellmate would pose to West as a victim.  That is sufficient to plead foreseeability.  *Cf. Megeff*, 123 Cal. App. 3d at 257; *Hooks*, 107 Cal. App. 3d at 444.  The motion is DENIED as to these defendants.

But for the same reasons that Miles fails to plead an Eighth Amendment or Fourteenth Amendment claim against Santiago, Gabriel, Solopow, Kiss, Gemmell, Yune, Galindo, and Magat, she fails to plead a negligence claim against them here.  *Supra* Parts III.A, B.  She does not present any factual allegations as to these defendants' knowledge of West, his mental health, or the prior attacks.  Without such allegations, she does not plead foreseeable harm to West as a victim.  They are DISMISSED with leave to amend.

### 2.    Bane Act

Finally, the defendants argue that Miles fails to state a claim for violation of the Bane Act because, they say, she fails to plead a constitutional violation or that the violation was brought by threats, intimidation, or coercion.

California Civil Code section 52.1 (the "Bane Act") "was enacted in 1987 to address hate crimes" and it creates "a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Chaudhry*, 751 F.3d at 1105).  To state claim under the Bane Act, a plaintiff must allege "both a constitutional violation and that the violation was brought about by threats, intimidation, or coercion."  *Sandoval v. Cnty. of Sonoma*, No. 11-cv-05817-TEH, 2016 WL 612905, at *2 (N.D. Cal. Feb. 16, 2016), *aff'd*, 912 F.3d 509 (9th Cir. 2018); *see also Monzon v. City of Murrieta*, 978 F.3d 1150, 1165 (9th Cir. 2020) ("Lastly, plaintiffs' Bane Act claim fails because the officers did not interfere or attempt to interfere with any constitutional rights using

threats, intimidation, or coercion." (citations omitted)).  "[T]he Bane Act does not require the 'threat, intimidation, or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."  *Reese*, 888 F.3d at 1043 (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 798-99 (2017), *as modified* (Nov. 17, 2017)).  Rather this element can be met by showing "a specific intent to violate" the constitutional rights of the injured party.  *Id.* (quoting *Cornell*, 17 Cal. App. 5th at 801-02).  "[R]eckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."  *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

As discussed above, Miles has stated multiple constitutional violations sufficient to meet the first requirement for stating a Bane Act claim.  *See Sandoval*, 2016 WL 612905, at *2.  The defendants' argument that Miles failed to allege that they violated a "clearly delineated and plainly applicable right," Mot. 25:3-10, is merely another way of arguing that she failed to allege a constitutional violation, and so is rejected for the same reasons.

Further, I previously granted the defendants' first motion to dismiss with leave to amend because Miles did not address the need to allege that a defendant interfered with constitutional rights using threats, intimidation, or coercion.  Prior Order 37:23-28.  That order did not hold that Miles had to plead "transactionally independent" allegations about threats, intimidation, or coercion that were separate from the underlying constitutional violations, *see Reese*, 888 F.3d at 1043; it merely required that she clarify her claims.  The defendants now cite several cases that were published before *Reese* that seem to require plaintiffs to provide such "transactionally independent" allegations, but the Ninth Circuit has since clarified that is not required to state a claim.

Instead, Miles may assert the defendants had the specific intent to violate her or West's constitutional rights.  *See id.* at 1045.  She does not do so for the Fourteenth Amendment claims alleging violations of her own constitutional rights, and she does not argue in opposition that her SAC meets this standard for this cause of action.  It is DISMISSED as a basis for her Bane Act Claim.  But she does plead the requisite intent to violate West's Eighth Amendment rights by alleging that certain defendants acted in reckless disregard to his rights.  *See id.*  The Supreme

Court has explained that "[i]t is . . . fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. As discussed, the SAC plausibly alleges that Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker, Lorier, Sablan, Herrera, Teves, and Jackson acted with deliberate indifference to West's rights. *Supra* Part III.A. Therefore, Miles has also pleaded that these defendants acted with reckless disregard for West's rights. *Cf. Farmer*, 511 U.S. at 836.

For those reasons, the motion is DENIED as to Smith, Mitchell, Pontejos-Murphy, McQuade, Aboujaoude, Stevenson, Rocker, Lorier, Sablan, Herrera, Teves, and Jackson with respect to the allegations that they violated West's Eighth Amendment rights. It is GRANTED as to the other individual defendants with respect to those allegations. It is also GRANTED as to all defendants to the extent that the Fourteenth Amendment violations serve as a basis for the Bane Act claim. Miles has leave to amend, one more time, to assert otherwise. If she chooses to do so, she should more clearly explain her argument in any resulting briefing.

### CONCLUSION

For those reasons, the motion is GRANTED in part and DENIED in part. Miles has one final opportunity to replead her claims. She may submit any amended complaint by January 19, 2024.

**IT IS SO ORDERED.**

Dated: December 21, 2023

William H. Orrick
United States District Judge

United States District Court
Northern District of California